EXHIBIT "A"

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>INSURANCE AUTO AUCTIONS, INC., an Illinois corporation; and DOES 1<br>through 10, Inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>BHT OF RICHMOND, LLC, a Florida limited liability company | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>**5/30/2024 8:22 AM**<br>**Kern County Superior Court**<br>**By Vanesa Jackson, Deputy** |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Kern County Superior Court -Metro Division Justice Building<br>1215 Truxtun Ave<br>Bakersfield, CA 93301 | CASE NUMBER:<br>*(Número del Caso):* BCV-24-101782 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Theodore K. Stream, SBN: 138160 / Donna M. DiCarlantonio, SBN: 312678
3403 Tenth Street, Suite 700
Riverside, CA 92501   Tel: (951) 783-9470

| | | | | |
|---|---|---|---|---|
| DATE:<br>*(Fecha)* 5/30/2024 | TARA LEAL | Clerk, by<br>*(Secretario)* | Vanesa Jackson | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Insurance Auto Auctions, Inc., an Illinois corporation
   under: ☒ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Theodore K. Stream, State Bar #138160
Donna M. DiCarlantonio, State Bar #312678
**STREAM KIM HICKS WRAGE & ALFARO, PC**
3403 Tenth Street, Suite 700
Riverside, CA    92501-3641
Telephone:    (951) 783-9470
Facsimile:    (951) 783-9475

Attorneys for Plaintiff,
BHT of Richmond, LLC,
a Florida limited liability company

ELECTRONICALLY FILED
5/29/2024 1:07 PM
Kern County Superior Court
By Julia Barrera, Deputy

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF KERN

| | |
|---|---|
| BHT OF RICHMOND, LLC, a Florida limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>INSURANCE AUTO AUCTIONS, INC., an Illinois corporation; and DOES 1 through 10, Inclusive,<br><br>Defendants. | CASE NO.   BCV-24-101782<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br>3. **DECLARATORY RELIEF**<br>4. **REFORMATION** |

Plaintiff, BHT of Richmond, LLC, a Florida limited liability company, alleges:

### I. PRELIMINARY ALLEGATIONS

1.      Plaintiff, BHT of Richmond, LLC ("BHT") is a limited liability company organized and existing under the laws of the State of Floria and authorized to do business in the State of California.

2.      BHT is informed and believes, and thereon alleges, that at all times herein mentioned, Defendant Insurance Auto Auctions, Inc. ("IAA") was, and is, a corporation organized and existing under the laws of the State of Illinois and authorized to do business in the State of California.

3.      The true names and/or capacities, whether individual, corporate, associate or otherwise, of the Defendants sued herein as DOES 1 through 50, inclusive, are unknown to BHT,

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

1
COMPLAINT

Firm-Templates -- 2974084.1

who therefore sues said Defendants by such fictitious names. BHT is informed and believes, and thereon alleges that some or all of the fictitiously named Defendants have participated in the alleged wrongful conduct and are responsible for the damages alleged to have been suffered by BHT. BHT will amend this Complaint to state their true names and capacities when the same have been ascertained. BHT intends all further references in this Complaint to defendant or defendants (including named defendants) to expressly include reference to each fictitiously named Defendant.

4.     BHT is further informed and believes, and thereon alleges, that at all times mentioned some or all of said Defendants were the officers, directors, principals, agents, servants, employees, and/or authorized representatives of some or all other Defendants and that, in doing the actions herein alleged, said Defendants were acting within the course and scope of such agency and/or authority.

5.     This action arises out of a written lease agreement (the "Lease") entered into between BHT, as landlord, and IAA, as tenant, for parcels of real property commonly known as 1400 South Sierra Highway, Rosamond, California 93560 (the "Property").

6.     Venue in proper in Kern County, California as IAA's liability under the Lease arose in Kern County, California and the Parties stipulated in the Lease that venue was in the county where the Property is located.

## II. STATEMENT OF RELEVANT FACTS

7.     BHT hereby repeats, realleges and incorporates each and every allegation set forth in the paragraphs above as though set forth fully herein.

8.     On or about February 26, 2021, BHT and IAA entered into the written Lease whereby BHT agreed to lease to IAA the Property, which consisted of approximately 79.47 gross acres of land that BHT acquired shortly after the Lease was executed by the parties. A true and correct copy of the Lease is attached and incorporated by reference as **Exhibit A**.

9.     This Lease is one of multiple independent leases entered into between BHT (and its affiliates) and IAA (and its affiliates) around the country for similarly constituted real property.

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

2
COMPLAINT

Firm-Templates -- 2974084.1

Each of these leases contained similar language and contingencies. IAA is a national automotive auction company and leases land with specific modifications and enhancements that would support its business. The subject Lease and the other leases entered into between the parties were for this purpose.

10.    The term of the Lease was for a period of 15 years, to commence on the date following, among other things:

    a.    The satisfaction of all Contingencies or IAA's written waiver of all Contingencies outlined in Section 40 of the Lease;

    b.    IAA's receipt of written evidence reasonably satisfactory to IAA that BHT has obtained all necessary Approvals; and

    c.    BHT's Substantial Completion of the Initial Improvements and satisfactory completion of any required final governmental inspections concerning the Initial Improvements.

(Exhibit A, Lease, ¶ 3(c).)

11.    Under the Lease, on the Rent Commencement Date, and on the first day of each calendar month thereafter, IAA is obligated to pay base rent in the amount of $182,875.00 a month, and subject to a yearly 2% increase. IAA would also be responsible for payment of the property taxes, insurance and other related expenses on the Property during the term of the Lease.

12.    To satisfy all contingencies under the Lease, BHT had to satisfy the Approval Contingency. The term "Approvals" as defined in the Lease included "all necessary governmental approvals, zoning approvals, condition use permits, special use permits, site plan approvals, building permits, occupancy permits, which are reasonably satisfactory to Lessee, for the Initial Improvements to be constructed (including, but not limited to, the Approvals) and for Lessee to operate its Permitted Use on the Premises." (Exhibit A, Lease ¶ 40(a).)

13.    The Approvals were to be obtained by BHT prior to commencement of construction of the Initial Improvements, and then rent would commence once BHT completed the Initial Improvements and turned the Property over to IAA. (Exhibit A, Lease ¶ 7(f).)

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

3
COMPLAINT

Firm-Templates -- 2974084.1

14. According to the Lease, once all contingencies were satisfied (including the Approval Contingency Period), IAA was obligated to deposit with the escrow agent designated in the Lease a security deposit in the amount of $2,194,500.00, which is equivalent to one year's base rent. (Exh. A, Lease ¶ 3(d).)

15. At the time the Lease was entered into by the parties, BHT did not yet own the Property and it was specifically contemplated by the parties that BHT would acquire the Property for the sole purpose of developing it to the specifications of IAA and then leasing it to IAA in accordance with the Lease.

16. Thus, in furtherance of and after execution of the Lease, in March of 2021 BHT acquired the Property. BHT then expended substantial sums to obtain the necessary Approvals during the Approval Contingency Period set forth in the Lease, and on materials in anticipation of commencing construction of the Initial Improvements.

17. Initially, the Approval Contingency Period was scheduled to expire 210 days from the effective date of the Lease (February 26, 2021). However, obtaining the appropriate approvals from various applicable governmental agencies was a much more time consuming, arduous and expensive process than either party anticipated. Thus, BHT and IAA entered into a series of amendments extending the Approval Contingency Period.

18. The first five amendments to the Lease extended the Approval Contingency Period through October 31, 2022. True and correct copies of each of these first five amendments to the Lease are attached and incorporated by reference as **Exhibit B**.

19. Sometime during the time period of the fifth amendment to the Lease, BHT and IAA were under the impression that the only remaining approval that would satisfy the Approval Contingency Period was obtaining a letter of map amendment ("LOMA") from the Federal Emergency Management Agency ("FEMA").

20. Thus, when the sixth amendment to the Lease was entered into, both parties mistakenly contemplated that a LOMA from FEMA was all that would be required for the purpose of commencing construction on the Initial Improvements. Thus, the sixth amendment to

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

4
COMPLAINT

Firm-Templates -- 2974084.1

the Lease was executed continuing the Approval Contingency Period to February 28, 2023 "solely for the purpose of obtaining the LOMA amendment from FEMA." And thereafter, an additional five amendments to the Lease were entered into which ultimately extended the Approval Contingency Period "solely for the purpose of obtaining the final LOMA amendment from FEMA" to August 31, 2023. True and correct copies of each of these sixth through eleventh amendments to the Lease are attached and incorporated by reference as **Exhibit C**.

21. Sometime prior to August 31, 2023, BHT determined that a LOMA from FEMA was not, in fact, required to commence construction of the Initial Improvements in accordance with the Lease. Rather, at the time the sixth amendment was executed, BHT and IAA had been operating under the mistaken fact that a LOMA from FEMA was required. However, BHT only needed to obtain a Conditional Letter of Map Revision ("CLOMR") from FEMA to commence construction of the Initial Improvements. Then, once the Initial Improvements were constructed, FEMA would issue an unconditional Letter of Map Revision after confirming that they were constructed in accordance with the approved plans and specifications.

22. The fact that a LOMA from FEMA was not required to be obtained to satisfy the Approval Contingency was communicated to IAA well before the Approval Deadline, but rather than acknowledge that all the Approvals had been obtained within the Approval Contingency Period, IAA first attempted to utilize the mistaken reference to LOMA as a pretense to convince BHT to sell the Property to IAA for approximately 85% less than its fair market value. IAA's proposal was rejected by BHT.

23. On August 24, 2023, after receiving the CLOMR (and, thus, all Approvals required to satisfy the Approval Contingency Period in the Lease), BHT sent IAA a letter advising that "all necessary approvals required for the initial improvements to be constructed and for Lessee to operate its Permitted Use on the Premises have been obtained." BHT also requested the Security Deposit from IAA to commence Initial Improvements, per the Lease. A true and correct copy of this August 24, 2023 approval notice is attached and incorporated by reference as **Exhibit D**.

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

5
COMPLAINT

Firm-Templates -- 2974084.1

24. Within forty-eight (48) minutes of receiving the August 24, 2023, approval notice, IAA sent BHT a one-sentence letter stating, "This letter shall serve as Lessee's notice of termination of the Lease pursuant to Paragraph 40(a) thereof." (the "Termination Notice"). Paragraph 40(a) allows IAA to terminate the Lease if BHT is unable to obtain the necessary Approvals within the Approval Contingency Period. A true and correct copy of IAA's Termination Notice is attached and incorporated by reference as **Exhibit E**.

25. After receipt of the Termination Notice, BHT inquired with IAA as to the Approvals IAA asserted had not been obtained. IAA simply responded that the "final LOMA has not been issued." However, at the time of the Termination Notice, IAA had full knowledge that a LOMA was not required to commence construction of the Initial Improvements, and thus was not an "Approval" required under the Lease. Instead, the actual approval needed was a CLOMR, which BHT had obtained within the Approval Contingency Period.

26. There is no reasonable basis for Defendant to determine that Plaintiff did not obtain "any and all necessary governmental approvals, zoning approvals, conditional use permits, special use permits, site plan approvals, zoning approvals, conditional use permits ... for the Initial Improvements to be constructed ... and for Lessee to operate its Permitted Use on the Premises." See Section 40(a) of the Lease.

27. As such, Defendant has wrongfully attempted to terminate the Lease and is otherwise in breach of the Lease.

**A.  IAA Also Exercised Its Right Of First Refusal And Then Wrongfully Failed To Purchase The Property.**

28. Section 43 of the Lease provides IAA "a continuing right of first refusal during the Term to purchase premises."

29. On or about September 30, 2021, BHT sent a letter (the "ROFR Notice") to IAA advising that BHT received an offer to sell the Property to a third party for the sum of $34,551,180.00, and that IAA had 10 business days from its receipt of the ROFR Notice to purchase the Property for the offered purchase price set forth in the ROFR Notice. A true and

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

6
COMPLAINT

correct copy of the ROFR Notice is attached and incorporated by reference as **Exhibit F**.

30. BHT granted IAA one extension of time to respond to the ROFR Notice, and thereafter, on November 1, 2021 IAA sent BHT a letter exercising IAA's right of first refusal to purchase the Property (the "ROFR Exercise Notice"). A true and correct copy of IAA's ROFR Exercise Notice is attached and incorporated by reference as **Exhibit G**.

31. As a result of IAA's exercise of its right of first refusal, IAA became contractually bound to purchase the Property pursuant to the terms set forth in the ROFR Notice. But, notwithstanding IAA's contractual obligation to acquire the Property, IAA communicated to BHT several weeks after sending the ROFR Exercise Notice that it no longer had an interest in acquiring the Property, and otherwise revoked its ROFR Exercise Notice by its failure to proceed with the acquisition of the Property.

32. As a result of IAA's failure to purchase the Property, BHT lost the ability to sell the Property for the purchase price set forth in the ROFR Notice.

**III.**

**FIRST CAUSE OF ACTION**

(Breach of Contract as to all Defendants)

33. BHT incorporates by reference each previously alleged paragraph in this Complaint as if fully set forth herein.

34. BHT is the owner and lessor of the Property, which was purchased as vacant land for the sole purpose of improving the land for lease of the Property to IAA, the lessee.

35. Pursuant to this understanding, BHT and IAA entered into the Lease whereby BHT would gain all Approvals necessary and conduct the Initial Improvements on the Property in anticipation of leasing the Property to IAA. Under the Lease, IAA agreed to deposit a Security Deposit into escrow equal to the first years' rent after BHT had gained all Approvals, and then IAA also agreed to lease the Property once BHT completed the Initial Improvements.

36. Under the Lease and its amendments, the Approval Contingency Period

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

7
COMPLAINT

Firm-Templates -- 2974084.1

under which BHT was to obtain all necessary Approvals to start Initial Improvements was set to expire August 31, 2023. On August 24, 2023, BHT sent IAA notice confirming that BHT had obtained all necessary Approvals and was ready to start Initial Improvements.

37.    That same day, on August 24, 2023, rather than make its initial Security Deposit so that BHT could commence Initial Improvements, IAA terminated the Lease.

38.    The basis for IAA's termination was that BHT had not obtained all the necessary approvals because BHT did not obtain a LOMA from FEMA. However, a LOMA from FEMA was never required to commence Initial Improvements. In fact, only a CLOMR from FEMA was required, which BHT had obtained within the Approval Contingency Period. Therefore, IAA's termination was in breach of the Lease.

39.    Further, prior to IAA's termination, in September of 2021, BHT had contemplated selling the Property and, pursuant to the Lease, had offered IAA a right of first refusal. IAA exercised this right of first refusal, but failed to purchase the Property, causing BHT to lose its potential buyer. This also constitutes a breach of the Lease.

40.    Under the terms of the Lease, BHT did all, or substantially all, of the significant things that the Lease required it to do. Any alleged nonperformance by BHT is excused due to the acts or failures of IAA. All conditions required for BHT's performance occurred or were excused.

41.    IAA breached the Lease by, among other things, (1) exercising its right of first refusal to purchase the Property and then subsequently failing to purchase the Property for the set price; and (2) terminating the Lease without cause.

42.    As a direct and proximate result of the aforesaid breach by IAA, BHT has expended time and money in obtaining the Approvals necessary and preparing for the Initial Improvements and is now unable to move forward with compensation under the Lease.

43.    As a result of IAA's breach, BHT has been injured in an amount to be proven at trial, which BHT anticipates will exceed the jurisdictional minimum, and has

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501.
951-783-9470

8
COMPLAINT

Firm-Templates -- 2974084.1

suffered damages in an amount to be determined at trial, plus interest at the legal rate. BHT is owed contractual, consequential and other legally compensable damages in an amount to be shown at trial, but greater than this Court's jurisdictional limit, plus interest at the legal rate.

## IV.

### SECOND CAUSE OF ACTION

(Breach of the Covenant of Good Faith and Fair Dealing as to all Defendants)

44.    BHT incorporates by reference each previously alleged paragraph in this Complaint as if fully set forth herein.

45.    BHT and IAA entered into the Lease.

46.    Under the Lease, there is an implied promise of good faith and fair dealing such that IAA shall not do anything to unfairly interfere with the rights of BHT to receive the benefits of the Lease.

47.    BHT has performed all, or substantially all, of the significant obligations, conditions, covenants and promises that the Lease required and/or BHT was excused from having to perform them.

48.    All conditions required for IAA's performance have occurred and/or were excused.

49.    IAA violated its duty to act fairly and in good faith and unfairly interfered with BHT's right to receive the benefits of the Lease.

50.    Namely, IAA breached the implied covenant of good faith and fair dealing in the Lease and has unfairly interfered with BHT's right to receive the benefits of the Lease by, without limitation, representing that it would exercise its right of first refusal pursuant to the Lease and then failing to exercise this right, causing BHT to lose its buyer; and terminating the Lease without cause.

51.    IAA's acts were in bad faith in that, among other things, IAA has done these things without justification or explanation and in disregard of the time and expenses incurred under the Lease by BHT. BHT has incurred and will continue to incur damages

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

9

COMPLAINT

Firm-Templates -- 2974084.1

due to IAA's unfair and intentional acts, which breached the implied covenant of good faith and fair dealing contained in the Lease.

52. As a direct, foreseeable and proximate result of IAA's breach of the implied covenant of good faith and fair dealing, BHT was harmed and has suffered damages, in an amount to be more particularly proven at trial, but reasonably believed to exceed this Court's jurisdictional limits.

## V.

## THIRD CAUSE OF ACTION

(Declaratory Relief as to all Defendants)

53. BHT incorporates by reference each previously alleged paragraph in this Complaint as if fully set forth herein.

54. BHT, as lessor, and IAA, as lessee, entered into the Lease whereby BHT would purchase the Property and complete all necessary approvals for improvement on the Property during the Approval Contingency Period. Upon obtaining all necessary approvals during the Approval Contingency Period, BHT would notify IAA and IAA would cause to be placed in escrow a Security Deposit equal to the first year's rent for the Property. Upon IAA's placement of the Security Deposit in escrow, BHT would undertake the Initial Improvements on the Property.

55. The Approval Contingency Period was extended through October 31, 2022 by the execution of amendments 1 through 5 to the Lease by the parties.

56. Sometime before the expiration of the October 31, 2022 Approval Contingency Period, BHT and IAA were informed that the only remaining approval that needed to be obtained by BHT was a LOMA from FEMA. This was a mistake. Instead, the only remaining approval that needed to be obtained was a CLOMR from FEMA.

57. In reliance on the understanding that only one remaining approval was needed to start the Initial Improvements, the parties entered into amendments 6 through 11 extending the Approval Contingency Period through August 31, 2023 "solely for the purpose of obtaining the final LOMA amendment from FEMA." However, the intent of

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

10
COMPLAINT

Firm-Templates – 2974084.1

the parties was to extend the Approval Contingency Period to allow BHT to obtain the one outstanding approval, and, therefore, the amendments should have extended the Approval Contingency Period for the purpose of obtaining the CLOMR from FEMA.

58.    Prior to August 31, 2023, BHT discovered the mistake and that a LOMA could not be obtained nor was it necessary to be obtained to start Initial Improvements on the Property.    Thus, BHT had obtained the approval that was necessary: the CLOMR. This satisfied BHT's obligations during the Approval Contingency Period and on August 24, 2023, BHT sent a letter requesting the Security Deposit from IAA to begin the Initial Improvements.

59.    On August 24, 2023, minutes after BHT sent the letter requesting the Security Deposit, IAA terminated the Lease.    IAA contends that the Lease was terminable due to BHT's failure to obtain all necessary approvals during the Approval Contingency Period.    On the other hand, BHT contends that it did obtain all necessary approvals required to start Initial Improvements, thereby satisfying BHT's obligations during the Approval Contingency Period.    Therefore, BHT contends that IAA invalidly terminated the Lease.

60.    An actual controversy now exists between IAA and BHT with respect to the rights and duties of the parties regarding the Lease and whether IAA has valid cause to terminate the Lease.    BHT contends that IAA invalidly terminated the Lease because BHT satisfied all obligations required of it during the Approval Contingency Period by obtaining a CLOMR from FEMA.    IAA contends that BHT did not obtain all the necessary approvals during the Approval Contingency Period and, therefore, IAA can terminate the Lease.

61.    Given the conflicting beliefs of the parties regarding liability under the Lease, a judicial declaration is necessary and appropriate at this time under the circumstances in order for BHT to ascertain its rights and duties under the Lease.

///

///

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

11
COMPLAINT

Firm-Templates -- 2974084.1

# VI.

## FOURTH CAUSE OF ACTION

### (Reformation as to all Defendants)

62. BHT incorporates by reference each previously alleged paragraph in this Complaint as if fully set forth herein.

63. The Lease and its amendments, specifically amendments 6 through 11, did not express the full intent of the parties thereto. Due to the mutual mistake of the parties thereto, or alternatively the mistake of BHT which IAA at the time knew or suspected, the Approval Contingency Period was extended for the sole purpose of BHT obtaining a LOMA from FEMA because the parties believed that a LOMA was the only outstanding necessary approval for BHT to obtain before starting the Initial Improvements. However, a LOMA was never necessary to start Initial Improvements on the Property. Instead, the sole outstanding necessary approval that BHT needed to obtain prior to commencing Initial Improvements was a CLOMR from FEMA.

64. BHT seeks that the Lease and its amendments be reformed pursuant to Civil Code Section 3399 to reflect the full intent of the parties, which full intent would include the extension of time of the Approval Contingency Period so that BHT could obtain the CLOMR from FEMA.

## PRAYER

**WHEREFORE**, Plaintiff prays for relief against Defendants, and each of them, as follows:

### As to the First Cause of Action for Breach of Contract:

1. For compensatory damages, general and special, according to proof at trial;

2. For interest at the legal rate as permitted by law; and

3. For reasonable attorneys' fees pursuant to the Lease.

### As to the Second Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing:

1. For compensatory damages, general and special, according to proof at trial;

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

12
COMPLAINT

Firm-Templates -- 2974084.1

2. For interest at the legal rate as permitted by law; and

3. For reasonable attorneys' fees pursuant to the Lease.

### As to the Third Cause of Action for Declaratory Relief:

1. For a judicial determination that, pursuant to the terms of the Lease and intent of the parties to the Lease, BHT satisfied all conditions required of it during the Approval Contingency Period by obtaining all necessary approvals and, therefore, IAA's termination of the Lease is improper and without cause.

### As to the Fourth Causes of Action for Reformation:

1. For reformation of the Lease;

2. For costs of suit including attorneys' fees to the extent provided by law.

### As to All Causes of Action:

1. For costs of suit incurred herein;

2. For such other and further relief as this Court deems just and proper.

Respectfully submitted,

STREAM KIM HICKS WRAGE & ALFARO, PC

Dated: May 29, 2024

By:_____
Theodore K. Stream
Donna M. DiCarlantonio
Attorneys for Plaintiff,
BHT of Richmond, LLC, a Florida limited
liability company

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

13
COMPLAINT

Firm-Templates -- 2974084.1

# EXHIBIT A

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

**Location: Rosamond, California**

### LEASE AGREEMENT

**THIS LEASE AGREEMENT** (this *"Lease"*) is entered into this 26th day of February, 2021 (the *"Commencement Date"*), by and between **BHT OF RICHMOND, LLC**, a Florida limited liability company (*"Lessor"*), having its principal office at 5555 Angers Ave, Suite 25, Fort Lauderdale, Florida 33312, and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation having its principal office at Two Westbrook Corporate Center, Suite 500, Westchester, Illinois 60154 (*"Lessee"*).

### RECITALS:

A.     Lessor represents and warrants that it is the contract purchaser of those certain parcels of real property commonly known as 1400 South Sierra Highway, Rosamond, California, legally described on **Exhibit A-1** attached hereto and depicted on **Exhibit A-2** attached hereto, consisting of approximately seventy-nine and 47/100 (79.47) gross acres (which are anticipated to include approximately sixty and 00/100 (60.00) Usable Acres (as defined herein)), together with a building containing approximately 9,800 square feet and all other improvements located thereon, the parking and loading areas, if any, and all easements, rights-of-way, and other rights appurtenant thereto (the *"Premises"*), pursuant to the real estate sales agreements, as amended from time to time (collectively, the *"PSAs"*), between the owners of such parcels and Lessor (or its affiliates). Lessor represents, warrants and covenants that Lessor (i) has provided true and complete copies of all such PSAs to Lessee (with the purchase prices redacted) and (ii) will provide any subsequent amendments or other modifications thereto to Lessee promptly after the same are executed. *"Usable Acres"* are defined as those acres situated on the Premises that are capable of storing inventory and shall include general inventory, drop zone, sale pad, areas designated for inventory pull-out, and the drive aisles located within those areas, as well as all buildings and structures currently located on the Premises and any adjacent parking areas servicing those buildings and structures.

B.     Lessor and Lessee desire to enter into this Lease, whereby, among other things, Lessor will (i) lease the Premises to Lessee and (ii) make the Initial Improvements (as hereafter defined) thereto on Lessee's behalf.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby covenant and agree as follows:

### AGREEMENT

1.     **LEASED PREMISES**.

(a)     Lessor does hereby demise and lease unto Lessee, and Lessee does hereby take and hire from Lessor, the Premises upon the terms and conditions set forth below.

(b)     Lessor shall use commercially reasonable efforts to Substantially Complete (as hereafter defined) the Initial Improvements to the Premises and deliver same to Lessee on or

01272933v11

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

before four hundred and thirty-five (435) days from the Effective Date (the "*Target Completion Date*"), which Initial Improvements shall conform to the Plans and Specifications (as hereafter defined) and otherwise be reasonably satisfactory to Lessee. Lessee shall have the right to inspect the Premises to confirm installation of the Initial Improvements in accordance with the Plans and Specifications. If Lessor fails to complete the Initial Improvements and deliver the Premises to Lessee within fourteen days from the Target Completion Date, then upon the Commencement Date (as hereafter defined), Lessee shall receive a credit against the Rent for the Premises equal to one day of Rent for each day of delay after the Target Completion Date.

(c)    Lessor shall keep Lessee reasonably informed as to the status of construction of the Initial Improvements and provide Lessee not less than sixty (60) days' prior written notice of the completion of the Initial Improvements and the anticipated delivery date of the Premises.

(d)    If any mechanic's, construction or other lien is filed against the Premises, or any part thereof, in connection with the Initial Improvements, then Lessor shall cause such lien to be canceled and discharged of record or bonded over within thirty (30) days after written request by Lessee. Further, Lessor shall indemnify and hold Lessee harmless from and against any loss which Lessee may sustain by reason of any such liens being filed against the Premises, including any reasonable attorneys' fees paid by Lessee in connection with such lien.

(e)    Notwithstanding anything set forth herein to the contrary, if (i) Lessor delivers at least sixty (60) Usable Acres to Lessee with the Initial Improvements thereto Substantially Completed and (ii) there is a portion of the Premises which remains undeveloped and which is not needed for (x) Lessee's business operations, (y) stormwater maintenance purposes or (z) compliance with any Approvals or Lessee Approvals (as such terms are hereafter defined) (the "*Undeveloped Acreage*"), then at any time after the Rent Commencement Date, Lessor may propose recapturing (the "*Proposed Recapture*") all or a portion of such Undeveloped Acreage (the "*Recaptured Undeveloped Acreage*") by providing written notice thereof to Lessee (the "*Proposed Recapture Notice*"), together with a depiction of the Recaptured Undeveloped Acreage.

(f)    Any Proposed Recapture shall be subject to Lessee's prior written approval within thirty (30) days after Lessee's receipt thereof, which approval will not be unreasonably withheld, provided that (i) such Proposed Recapture will not materially adversely affect Lessee's business operations for the Permitted Use, (ii) Lessor's intended use of the Recaptured Undeveloped Acreage is reasonably compatible with Lessee's Permitted Use, (iii) any zoning changes or other governmental approvals obtained in connection with the Recaptured Undeveloped Acreage will not materially adversely affect Lessee and its Permitted Use of the Premises, (iv) the parties enter into an amendment to this Lease in a form reasonably acceptable to Lessee, whereby (x) the Recaptured Undeveloped Acreage is excluded in all respects from Lessee's obligations under this Lease (including, but not limited to, Lessee's obligation to pay the Taxes), (y) Lessor agrees to (1) pay the proportionate share of the Taxes attributable to the Recaptured Undeveloped Acreage and (2) seek a tax division, whereby a separate tax bill will be issued for the portion of the Premises retained by Lessee and (z) Lessor agrees to minimize any interference with Lessee's business operations in connection with the development of the Recaptured Undeveloped Acreage, (v) Lessor shall be solely responsible, at its sole expense, for obtaining any governmental approvals with respect to the Recaptured Undeveloped Acreage and (vi) Lessor

01272933v11                                    2



DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

shall be solely responsible, at its sole expense, for any alterations to the Premises required to complete the Proposed Recapture (e.g., relocating perimeter fencing).

2.    **TERM**.  The initial term of this Lease (the *"Initial Term"*) shall commence on the date hereof (the *"Commencement Date"*) and expire at 11:59 pm (EST) on the last day of the One Hundred Eightieth (180th) full calendar month after the Rent Commencement Date (defined below), as may be extended as set forth in this Lease.

3.    **RENT; SECURITY DEPOSIT**.

(a)    Beginning on the Rent Commencement Date, and on the first (1st) day of each calendar month thereafter, Lessee shall commence paying annual rent for each twelve (12) month period following the Rent Commencement Date (each, a *"Lease Year"*), the amount of Two Million One Hundred and Ninety-Four Thousand Five Hundred and 00/100 Dollars ($2,194,500.00), payable in equal monthly installments of One Hundred Eighty-Two Thousand Eight Hundred and Seventy-Five and 00/100 Dollars ($182,875.00) (*"Base Rent"*) (i.e., $3,047.92 per Usable Acre per month) to Lessor via electronic funds transfer to Lessor's bank account, per the wiring instructions to be provided by Lessor to Lessee on or before the Rent Commencement Date, or such other account or location as directed by Lessor in writing. Notwithstanding the foregoing, the Base Rent shall be adjusted based on the actual Usable Acres delivered by Lessor in accordance with Section 3(d) hereof; provided, however, (i) in no event will the annual Base Rent for the Premises exceed Two Million One Hundred and Ninety-Four Thousand Five Hundred and 00/100 Dollars ($2,194,500.00) (i.e., $182,875.00 per month), regardless of the actual number of Usable Acres delivered by Lessor (i.e, if the Usable Acres of the Premises exceeds 60 Usable Acres, the annual Base Rent will nevertheless be capped at $2,194,000.00 and (ii) if Lessor delivers less than fifty (50) Usable Acres, then Lessee may elect to terminate this Lease by sending written notice thereof to Lessor, in which case, subject to Lessor's Put Option under Section 45 hereof, this Lease shall be terminated and null and void. For demonstrative purposes, in the event the Premises consist of fifty-five (55) Usable Acres, the total monthly Base Rent shall be $167,635.40 ($182,875.00 – ($3,047.92 x [60-55])). The Base Rent for the first partial month, if applicable, beginning with the Rent Commencement Date, shall be prorated and paid upon the Rent Commencement Date. The Base Rent for the second Lease Year and each subsequent Lease Year falling within the Initial Term shall be increased on the first day of each such Lease Year by two percent (2.00%) of the Base Rent payable in the immediately preceding Lease Year.

(b)    Promptly after Substantial Completion of the Initial Improvements, the parties will (i) cause a surveyor licensed in the State of California and mutually acceptable to both parties to conduct field measurements to determine the actual number of Usable Acres delivered by Lessor and (ii) incorporate such Usable Acres determination and the corresponding Base Rent into the Rent Commencement Date Certificate. The cost of such survey shall be borne by Lessor. The surveyor's determination regarding the number of Usable Acres shall be conclusive and binding on the parties.

(c)    For purposes of this Lease, the *"Rent Commencement Date"* shall be that date following: (A) the satisfaction or Lessee's written waiver of all Contingencies set forth in Section 40 below; (B) Lessee's receipt of written evidence reasonably satisfactory to Lessee that

01272933v11                                    3

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

Lessor has obtained all Approvals; (C) Lessor's Substantial Completion of the Initial Improvements and satisfactory completion of any required final governmental inspections concerning the Initial Improvements; (D) issuance of any required certificates of occupancy or similar document issued by the applicable governmental authority so as to allow and permit Lessee to open for business and occupy and use the Premises and the Initial Improvements for the Permitted Use (as hereafter defined); (E) receipt by Lessee of fully-executed NDA(s) (defined below), in conformance with Section 42 below; (F) the parties' reasonable determination of the actual Usable Acres of the Premises and (G) execution by both parties of a Rent Commencement Date Certificate in the form of **Exhibit C** attached hereto.

(d)     On the date that is three (3) business days after the Approvals are obtained by Lessor, Lessee shall deposit into an escrow account (the "Escrow Account") with Pedersen & Houpt, as escrowee (the "Escrowee"), the sum equivalent to one year's Base Rent (the "Security Deposit"), pursuant to a sole order escrow agreement (the "Escrow Agreement") between Lessee and Escrowee; provided, however, (i) Lessee shall have no right to withdraw the Security Deposit, or any portion thereof, from the Escrow Account, other than in connection with (x) a Lessor default beyond any applicable notice and cure periods or (y) Lessee's termination of this Lease in accordance with the terms hereof and (ii) not less than five (5) business days prior to any such withdrawal, Lessee shall provide written notice of such withdrawal.  Within three (3) business days after the Rent Commencement Date, the Security Deposit shall be transferred to and maintained with Lessor, as security for Lessee's faithful performance of Lessee's obligations under this Lease.  Upon the occurrence of a default by Lessee beyond any applicable notice and cure period, Lessor may use, apply or retain all or any portion of the Security Deposit for the payment of any past due Rent which may be owed hereunder, or for any sum which Lessor may expend to cure any default of Lessee.  If Lessor uses or applies all or any portion of the Security Deposit, Lessee shall, within five (5) days after written demand, deposit cash with Lessor in an amount sufficient to restore the Security Deposit to the amount then required by the terms of this Section.  Provided that there then is no default by Lessee hereunder, Lessor shall release five sixths (5/6ths) of the Security Deposit to Lessee in equal monthly installments, commencing on first day of the sixtieth (60th) full calendar month of the Term and continuing for a period of twelve (12) calendar months thereafter, which shall be in the form of a credit against rent for each applicable month.  The remainder of said Security Deposit, if any, shall be returned to Lessee (or to the last assignee, if any, of Lessee's interest hereunder) within thirty (30) days after the expiration or earlier termination of the term hereof.

4.    **TAXES**.

(a)     Beginning on the Rent Commencement Date, Lessee shall pay directly to the appropriate taxing authority as additional rent (*"Additional Rent"*, and together with Base Rent, the *"Rent"*) all general real estate taxes and assessments levied and assessed against the Premises (*"Taxes"*) which are payable during the Term, or any extension thereof, when due and before the same become delinquent.  Notwithstanding the foregoing, in the event Lessee shall have no obligation to pay Lessee may request the taxing authority to send all tax bills and assessment notices directly to Lessee.  Lessor may request the taxing authority to send duplicate tax bills and assessment notices directly to Lessor.  Notwithstanding the foregoing, Lessor shall be solely responsible for any increase in the Taxes resulting from the sale of the Premises (or portion thereof) by original Lessor or its successor at any time after the second (2nd) anniversary of the

01272933v11                                             4

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

Rent Commencement Date.  Lessor shall deliver any and all tax bills and assessment notices to Lessee within five (5) business days after Lessor's receipt of same.  Upon written request, Lessee shall furnish to Lessor proof of payment of the Taxes.

(b)     During the first and last Lease Years, Lessee shall pay a proportion of the Taxes which are due and payable during such calendar year (even if levied in arrears for a prior tax year), equal to the proportionate part of such calendar year following the Rent Commencement Date (in the case of the first Lease Year) or preceding the expiration or earlier termination of this Lease (in the case of the last Lease Year).  In no event shall Lessee be responsible for paying any Taxes which become due and payable following the expiration of the Term.  Nothing in this Lease shall require Lessee to pay franchise, estate, inheritance, succession, capital levy or transfer tax of Lessor, or any income, excess profits or revenue tax or any special tax or assessment not attributable solely to Lessee's use of the Premises.

(c)     Lessee may, in good faith and in a lawful manner, and upon giving notice to Lessor of its intention to do so, contest the Taxes levied and assessed against the Premises, but all costs and expenses incident to such contest and incurred by Lessee shall be paid by Lessee and, in case of an adjudication adverse to Lessee, then Lessee shall promptly pay the Taxes.  If necessary to prevent a tax sale or other loss, Lessee shall pay the Taxes under protest and take such other reasonable steps to protect the Premises during the course of protesting the Taxes.

(d)     The following tax identification number is applicable to the Premises:

A.P.N.: 473-023-06-00-3

5.     **PERMITTED USE**.  Lessee may use the Premises to conduct its business of providing automotive and specialty salvage services, including processing and selling operable, inoperable, total-loss and theft recovered motor vehicles, warehousing, storing, inspecting, auctioning, and selling such motor vehicles, and for all related office uses and other activities related to and in connection with Lessee's business operations, and/or for any other use that does not constitute a violation of the zoning laws and regulations governing use of the Premises ("*Permitted Use*").  If at any time during the Term the Permitted Use shall be prohibited by law or ordinance or other governmental regulation or prevented by injunction as to any part or all of the Premises other than as a result of a condemnation, Lessee, at Lessee's sole option, may elect to terminate this Lease by providing written notice thereof to Lessor in which case, subject to Lessor's Put Option under Section 45 hereof, this Lease shall be terminated and null and void.

6.     **REPAIRS AND MAINTENANCE**.

(a)     Lessor, at Lessor's sole cost and expense, shall maintain, repair and replace (i) the roof, foundation, load bearing walls, exterior walls and the stormwater drainage system of the building and improvements located on the Premises in good condition and repair and (ii) the stormwater control facilities to be constructed on the Premises, as contemplated in the Conceptual Improvement Plans; provided, however, Lessor shall (i) enter into a service contract with a reputable third-party vendor to maintain the stormwater drainage system and (ii) pass through the cost of such service contract to Lessee as Additional Rent, not to exceed $2,000 in any calendar year.  Lessee shall give Lessor written notice of any repairs or replacements

01272933v11                                            5

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

required to be made by Lessor pursuant to this Section 6(a), after which Lessor shall have a reasonable period of time to complete the required maintenance, repairs or replacements; provided, however, Lessor shall complete any such maintenance, repairs or replacements within thirty (30) days following receipt of written notice from Lessee, except that, in the event of an emergency, Lessor shall immediately complete any such maintenance, repairs or replacements. Notwithstanding the foregoing, Lessee shall have the right to perform any required maintenance, repairs and replacements to any portion of the building or improvements located on the Premises and/or the Stormwater Ponds with Lessor's prior written approval, which approval or disapproval shall be given within thirty (30) days following Lessee's written request therefor; provided, however, that in the event of an emergency, Lessor shall immediately provide its approval or disapproval. In the event Lessor fails to respond within the time periods provided above, Lessor shall be deemed to have granted its consent to Lessee to performing such maintenance, repairs or replacements. In the event Lessee completes any such maintenance, repairs or replacements, Lessee shall be entitled to offset all costs and expenses incurred in the completion of same against Rent.

(b)     In the exercise of its obligations under this Section 6, Lessor shall use all reasonable efforts not to adversely affect the ingress and/or egress to the Premises or to interrupt the operation of Lessee's business at the Premises. In the event that such ingress and/or egress is so affected or Lessee's business so interrupted, Rent shall abate for the period during which such condition shall continue.

(c)     Excepting those repairs for which Lessor is responsible under this Section 6, Lessee, at Lessee's sole cost and expense, shall maintain the Premises in substantially the same or better condition as same existed on the Rent Commencement Date, ordinary wear and tear for the Permitted Use and loss by fire or other casualty excepted.

(d)     Notwithstanding anything set forth herein to the contrary, Lessor agrees, during the twelve (12) full calendar month period immediately following the Rent Commencement Date (the "*Warranty Period*"), and at its own expense, to maintain, repair and replace the Initial Improvements, in good repair and condition, except for any maintenance, repair or replacement to same required as a direct result of the act of Lessee or its employees, agents or invitees (the "*Warranty*"). In connection therewith, Lessor shall obtain a one (1) year warranty (collectively, the "*Construction Warranties*") of the Initial Improvements from its general contractor and subcontractors constructing such Initial Improvements Simultaneously with the expiration of the Warranty Period, Lessor agrees that it shall deliver to Lessee assignment(s) of its interest in any and all warranties (including, but not limited to, the Construction Warranties) to the Premises from the Initial Improvements and/or for any work or improvements performed on the Premises during the Warranty Period, which assignment(s) shall be in form and substance reasonably acceptable to Lessee (the "*Warranty Transfer*"). Lessee agrees to use commercially reasonable efforts to enforce any claims available to Lessee under such warranties (including, but not limited to, the Construction Warranties) subsequent to the date of such Warranty Transfer.

7.     **IMPROVEMENTS**.

(a)     The parties acknowledge that (i) the initial improvements ("*Initial Improvements*") to the Premises are generally described and depicted in the preliminary design

01272933v11                                     6

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

documents referenced in **Exhibit D** attached hereto (the "*Conceptual Improvement Plans*") and (ii) the Conceptual Improvement Plans are incomplete in that they (x) do not yet include final grading plans and (y) remain subject to further revision by the parties. From and after the Commencement Date, the parties shall reasonably and diligently cooperate to prepare grading plans for the Initial Improvements and otherwise finalize the Conceptual Improvement Plans to each party's satisfaction. In connection therewith, Lessor shall send written notice to Lessee enclosing further revisions to the Conceptual Improvement Plans and requesting Lessee's approval of the same. Within seven (7) business days after Lessee's receipt of such revised Conceptual Improvement Plans, Lessee shall send a written notice to Lessor either (i) approving the Conceptual Improvement Plans or (ii) proposing reasonable changes to the Conceptual Improvement Plans. If Lessee fails to respond to the Conceptual Improvement Plans within such seven (7) business day period, Lessee shall be deemed to have approved such Conceptual Improvement Plans, provided that (x) Lessor sends a second written notice to Lessee which includes the following in capitalized type on the first page of such notice: "IF LESSEE SHALL FAIL TO EITHER APPROVE OR DISAPPROVE THE CONCEPTUAL IMPROVEMENT PLANS THAT WERE DELIVERED TO LESSEE ON [INSERT DATE] ON OR BEFORE THE FIFTH (5TH) BUSINESS DAY FOLLOWING RECEIPT OF THIS NOTICE, SUCH CONCEPTUAL IMPROVEMENT PLANS SHALL BE DEEMED APPROVED BY LESSEE." and (y) Lessee fails to respond to such second notice within such additional five (5) business day period. If Lessee proposes reasonable changes to the Conceptual Improvement Plans, Lessor shall revise the Conceptual Improvement Plans accordingly and resubmit them, within five (5) business days of receipt of Lessee comments, to Lessee for approval, in which case the revision process described herein shall be repeated until finally approved or deemed approved. The Conceptual Improvement Plans, as finalized approved (or deemed approved) by Lessor and Lessee, are hereafter collectively referred to as the "*Preliminary Improvement Plans* ".

(b)     Promptly after the parties' approval of the Preliminary Improvement Plans, Lessor shall cause its architect and engineer to prepare permit plans and specifications for the construction of the Initial Improvements (the "*Proposed Plans and Specifications*"), which Proposed Plans and Specifications shall (i) comply with all applicable federal, state and local laws, codes and ordinances, (ii) in all material respects, be consistent with the Preliminary Improvement Plans and (iii) be subject to Lessee's prior written approval, which approval will not be unreasonably withheld.

(c)     Promptly after the Proposed Plans and Specifications are prepared, Lessor shall send written notice to Lessee enclosing the Proposed Plans and Specifications and requesting Lessee's approval of the same. Within seven (7) business days after Lessee's receipt of such Proposed Plans and Specifications, Lessee shall send a written notice to Lessor either (i) approving the Proposed Plans and Specifications or (ii) proposing reasonable changes to the Proposed Plans and Specifications. If Lessee fails to respond to the Proposed Plans and Specifications within such seven (7) business day period, Lessee shall be deemed to have approved such Proposed Plans and Specifications, provided that (x) Lessor sends a second written notice to Lessee which includes the following in capitalized type on the first page of such notice: "IF LESSEE SHALL FAIL TO EITHER APPROVE OR DISAPPROVE THE PROPOSED PLANS AND SPECIFICATIONS THAT WERE DELIVERED TO LESSEE ON [INSERT DATE] ON OR BEFORE THE FIFTH (5TH) BUSINESS DAY FOLLOWING RECEIPT OF THIS NOTICE, SUCH PROPOSED PLANS AND SPECIFICATIONS SHALL

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

BE DEEMED APPROVED BY LESSEE." and (y) Lessee fails to respond to such second notice within such additional five (5) business day period. If Lessee proposes reasonable changes to the Proposed Plans and Specifications, Lessor shall revise the Proposed Plans and Specifications accordingly and resubmit them, within five (5) business days of receipt of Lessee comments, to Lessee for approval, in which case the revision process described herein shall be repeated until finally approved or deemed approved. The Proposed Plans and Specifications, as approved or deemed approved by Lessor and Lessee, are hereafter collectively referred to as the "*Plans and Specifications*". Notwithstanding anything set forth herein to the contrary, Lessee may, from time to time propose change orders to the Plans and Specifications by providing written notice of the same to Lessor; provided, however, any such change orders shall remain consistent, in all material respects, with the Plans and Specifications. Notwithstanding anything set forth in Section 20 hereof to the contrary, notices under this Section 7 regarding the Conceptual Improvement Plans, the Proposed Plans and Specifications and any proposed change orders to the Plans and Specifications shall be provided exclusively via email as follows:

To Lessee:    Peter Doder, email: pdoder@iaai.com
              Jay Bajgert, email: jay.bajgert@iaai.com
              Aaron Terry, email: aaron.terry@iaai.com

To Lessor:    Ram Adar, email: ram@bhtpropertiesgroup.com

(d)    The Initial Improvements shall be performed by Lessor, at Lessor's sole cost and expense.

(e)    Reference is made to 10th Street West along the eastern boundary of the Premises ("*10th St.*") and Patterson Road along the southern boundary of the Premises ("*Patterson Rd.*", together with 10th St., the "*Adjacent Roads*"). The parties acknowledge and agree that Lessor's obligation to complete the Initial Improvements shall include improving (or causing to be improved) to Kern County specifications and at Lessor's sole expense the following: (i) the Adjacent Roads and (ii) the access points to the Premises from the Adjacent Roads.

(f)    Lessor shall, at Lessor's sole expense, obtain all of the Approvals (as hereafter defined) required in connection with the construction of the Initial Improvements, including, but not limited to, the following:

(i)    Grading Plans.

(ii)    Site Plan.

(iii)    Landscaping Plans.

(iv)    Drainage/storm water Plans.

(v)    Road Dedication.

(vi)    Septic System.

(vii)    Conditional use permit, if required.



DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

The Approvals shall be obtained by Lessor prior to the commencement of construction of the Initial Improvements. For purposes of clarification, the parties acknowledge that (x) the foregoing representation expressly excludes any business licenses, permits or other approvals that may be required for Lessee to operate its business at the Premises for the Permitted Use (collectively, the "*Business Approvals*") and (y) Lessee is solely responsible for determining which Business Approvals are needed and for obtaining such Business Approvals.

(g)     Lessee may engage an architect and/or civil/geotechnical engineer ("*Lessee's Engineer*") to monitor the design and construction of the Initial Improvements. Lessor shall reimburse Lessee for the actual fees and costs paid to Lessee's Engineer (the "*Engineering Costs*") in an amount not to exceed $75,000 (the "*Engineering Costs Cap*"), which Engineering Costs shall be credited against the first monthly installment of Base Rent for the Premises and, if necessary, each monthly installment thereafter until the Engineering Costs have been fully reimbursed; provided, however, nothing contained herein shall prohibit Lessee from being reimbursed for any Engineering Costs incurred by Lessee on or after the Rent Commencement Date, which fees and costs shall be credited against subsequent monthly installments of Base Rent in a manner consistent with this Section 7(c). Lessee and Lessee's Engineer shall have the reasonable right to inspect the Premises from time to time to confirm installation of the Initial Improvements in accordance with the Plans and Specifications.

(h)     For purposes of this Lease, "*Substantial Completion*" of the Premises shall occur upon (i) the substantial completion of construction of the Initial Improvements to the Premises pursuant to the Plans and Specifications, subject to the completion of any punchlist items (the "*Punchlist Items*") which will not prevent Lessee from commencing to do business on the Premises for the Permitted Use, all as reasonably determined by the parties, and (ii) Lessee's receipt of a written notice from Lessor (each, a "*Substantial Completion Notice*"), whereby Lessor notifies Lessee of the Substantial Completion of the Initial Improvements to the Premises and provides a list of the Punchlist Items to Lessee, provided that such Punchlist Items shall be completed by Lessor within thirty (30) days after Lessee's receipt of such Substantial Completion Notice.     Notwithstanding the foregoing, Lessee may, within thirty (30) days after Lessee's receipt of such Substantial Completion Notice, provide written notice (each, an "*Initial Improvements Correction Notice*") to Lessor identifying any Initial Improvements to the Premises which are (x) incomplete or otherwise defective, as reasonably determined by Lessee and (y) in addition to the Punchlist Items, in which event Lessor shall complete or correct (as applicable) such Initial Improvements within thirty (30) days after Lessor's receipt of such Initial Improvements Correction Notice. In the event an Initial Improvements Correction Notice is not sent by Lessee to Lessor within the time set forth above, Lessee shall be deemed to have waived its right to contest that Substantial Completion has occurred.

(i)     Other than the Initial Improvements, Lessee shall not make any other installations, alterations or additions in or to the Premises ("*Other Improvements*") without securing the prior written consent of Lessor in each instance, which consent shall not be unreasonably withheld, delayed or conditioned; provided, however, Lessee shall have the right, without obtaining Lessor's consent, to perform any such Other Improvements to the Premises that do not permanently affect the building's or other improvements' systems or structure. Notwithstanding anything to the contrary contained herein, Lessor shall not withhold its consent to any Other Improvements that are integral and necessary in Lessee's reasonable judgment to

01272933v11                                    9

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

operate Lessee's business for the Permitted Use at the Premises. Any Other Improvements shall be made at Lessee's sole cost and expense. At the time Lessor's consent to any Other Improvements is requested, Lessee shall submit to Lessor plans and specifications for such Other Improvements.

(j)    The Initial Improvements and any Other Improvements shall be completed in a good and workmanlike manner with first-class materials and workmanship and in compliance with all applicable laws. Lessee shall not be required to remove the Initial Improvements or the Other Improvements or to restore the Premises to its original condition at the end of the Term.

(k)    All Other Improvements which are made by or on behalf of Lessee, whether real or personal, shall be Lessee's property. Lessee may, but shall not be required to, remove its Other Improvements upon expiration or earlier termination of this Lease, as long as Lessee repairs any material physical damage resulting from such removal. Lessee shall have no authority to cause or permit a mechanic's, construction or other lien to arise or be perfected with respect to the Premises or any part thereof. If any mechanic's, construction or other lien is filed against the Premises, or any part thereof, by reason of Lessee's acts or omissions or because of a claim against Lessee, then Lessee shall cause such lien to be canceled and discharged of record or bonded over within thirty (30) days after written request by Lessor. Further, Lessee shall indemnify and hold Lessor harmless from and against any loss which Lessor may sustain by reason of any such liens being filed against the Premises; including any reasonable out-of-pocket attorney's fees paid by Lessor directly related to such lien.

8.    **OWNERSHIP AND POSSESSION**. Lessor represents and warrants that (i) prior to the expiration of the Acquisition Contingency (as defined in Section 40(d) hereof), Lessor shall be the sole owner in fee simple of the Premises with good and marketable title thereto with the full right to lease the Premises for the Term, and (ii) so long as Lessee shall pay all Rent as the same shall become due and payable and shall comply with its other covenants and agreements as herein contained, Lessee shall peaceably and quietly have, hold and enjoy the Premises for the Term. Additionally, Lessor covenants that Lessee shall at all times have unobstructed and adequate means of ingress and egress between the Premises and a public street or highway.

9.    **SUBORDINATION**. Lessee agrees to, and will upon written demand by Lessor, execute such documents as may be reasonably required to subordinate the rights and interests of Lessee under this Lease to the lien of any mortgage, deed of trust, ground lease or other instrument placed upon the Premises; provided, however, any such mortgagee, trustee, ground lessor or other party shall first be required to recognize Lessee's interest in the Premises and shall provide that, in the event of foreclosure or other enforcement of any such instruments, this Lease shall remain in full force and effect barring breach or default by Lessee beyond any applicable grace or cure periods. Lessee will agree to attorn to the mortgagee, trustee, ground lessor or other party as successor Lessor in the event of foreclosure provided Lessee's use and occupancy of the Premises shall not be disturbed during the Term.

10.    **FIXTURES, EQUIPMENT AND SIGNS**. All equipment, machinery, trade fixtures, and all appurtenances thereto, and other property of every description used, installed or placed on the Premises by Lessee which can be removed without material physical damage to Lessor's real property ("*Personal Property*") shall be owned by Lessee and deemed Lessee's personal

01272933v11                                    10

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

property. Lessee may remove its Personal Property upon expiration or earlier termination of this Lease, provided that Lessee repairs any material physical damage to the Premises caused by such removal. Lessee, at Lessee's cost, shall have the right to install signs on the Premises identifying and advertising Lessee's business and the business of Lessee's sublessees and/or licensees; provided, however that Lessee shall comply with all relevant laws and ordinances related to same.

11. **COMPLIANCE WITH LAWS**. Lessor shall comply with all laws, statutes, ordinances and governmental regulations or requirements now or hereafter in force, and with the requirements of the local Board of Fire Underwriters or any similar body now or hereafter constituted relating to or affecting the conditions, use or management of the common areas, structure and systems of the buildings and improvements located on the Premises. Lessor hereby represents to Lessee that the Premises and any surrounding property or improvements owned or operated by Lessor contain no Hazardous Materials (defined below) and are in compliance with all applicable laws. Lessor will indemnify, defend and save Lessee and the Lessee Parties (defined below) harmless from any and all actions, proceedings, claims, costs (including reasonable attorneys' and consultants' fees), expenses and losses of any kind arising in connection with any alleged failure by Lessor or a prior lessee, owner or other occupant to comply with any law, statute, ordinance or governmental regulation or requirement relating to or affecting the use or occupancy of the Premises.

12. **UTILITIES**. Lessor represents and warrants to Lessee that the Premises presently are and will continue during the Term to be directly served by sewer or septic, stormwater drainage system, water, gas, electricity, telephone and internet, that all such utilities are separately metered, and that all such utilities are in good and sufficient working order for Lessee to engage in its Permitted Use on the Premises. In the event the utilities are not separately metered, Lessor, at Lessor's sole cost and expense, shall have the utilities separately metered on or prior to the Commencement Date. Lessee shall pay for all sewer, water, gas, electricity, telephone and internet services used exclusively by Lessee in or about the Premises during the Term, and shall pay all sewer use fees or similar charges made or imposed with respect to or against the Premises during the Term. Lessor shall not be liable in the event of any interruption or failure of utilities or any other service to the Premises, unless caused by Lessor's, its contractors' or employees' negligence or willful misconduct, in which event Rent shall abate during the period of any such interruption or failure.

13. **INSURANCE**. Lessee shall, at all times during the Term, maintain and pay for the following insurance with a minimum A.M. Best rating of A-:

(a) Commercial General Liability and property damage insurance in an amount not less than One Million Dollars ($1,000,000.00) per occurrence and Four Million Dollars ($4,000,000) in the aggregate. The policy shall name Lessor as an additional insured and shall require at least thirty (30) days written notice to Lessor prior to cancellation, termination or material modification. Such insurance shall be maintained in a company or companies authorized to do business in the State in which the Premises are located.

(b) Fire and extended coverage insurance, including malicious mischief and vandalism coverage, on any building and improvements located on the Premises, in an amount

01272933v11                                          11

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

not less than its full replacement value as determined from time to time, the policies therefor to be made payable to Lessee to be applied consistent with Section 15 below, and Lessee shall endeavor to cause its insurer to provide at least ten (10) days prior written notice to Lessor prior to cancellation, termination or material modification of the policy as a result of non-payment of premiums and at least thirty (30) days prior written notice to Lessor prior to cancellation, termination or material modification of the policy as a result of any reason other than non-payment of premiums. Such insurance shall be maintained in a company or companies authorized to do business in the State in which the Premises are located. Lessee shall maintain its own insurance on its Personal Property. Such insurance shall provide that it is primary and non-contributory.

(c)     Pollution Legal Liability insurance in an amount not less than Two Million Dollars ($2,000,000) per occurrence, with an annual aggregate of at least Five Million Dollars ($5,000,000), insuring bodily injury, property damage, cleanup costs and reasonable attorneys' fees and costs (including, but not limited to, costs and expenses incurred in the investigation, defense and/or settlement of claims) arising from Lessee's activities on the Premises.

(d)     Lessee shall, prior to taking possession of the Premises, deliver to Lessor certificates evidencing the insurance referred to above, and Lessee shall deliver to Lessor certificates evidencing said insurance each year thereafter during the Term.

(e)     Lessor and Lessee each hereby waive any and every claim for recovery from the other for any and all loss of or damage to the Premises or to the contents thereof, which loss or damage is covered (or is required hereunder to be covered) by valid and collectible physical damage insurance policies.

14.   **WAIVER OF CLAIMS AND INDEMNITY.**

(a)     Lessee agrees that, to the extent not expressly prohibited by law, or caused by the negligence or willful misconduct of Lessor or its officers, agents, contractors, invitees or employees (the "*Lessor Parties*") or arising out of a breach by Lessor of its covenants under this Lease, Lessor and the Lessor Parties shall not be liable for any damage either to person or property sustained by Lessee or the Lessee Parties due to the building or the improvements located on the Premises or any part thereof or any appurtenances thereof becoming out of repair, or due to the happening of any accident in or about said building or improvements, or due to any act or neglect of any tenant or occupant of said building or improvements. This provision shall apply particularly, but not exclusively, to damage caused by water, snow, frost, steam, sewage, gas, electricity, sewer gas or odors or by the bursting, leaking or dripping of pipes, faucets and plumbing fixtures and windows, and shall apply without distinction as to the person whose act or neglect was responsible for the damage and whether the damage was due to any of the causes specifically enumerated above or to some other cause of an entirely different kind. Lessee further agrees that all of Lessee's Personal Property in the Premises shall be at the risk of Lessee only and that Lessor shall not be liable for any loss or damage thereto or theft thereof, unless otherwise provided for herein or caused by the negligence or willful misconduct of Lessor or the Lessor Parties. Lessee shall protect, indemnify and save Lessor and the Lessor Parties from and against any and all obligations, liabilities, costs, damages, claims and expenses of whatever nature arising from injury to persons or damage to property on the Premises arising out of or in

01272933v11                                      12

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

connection with Lessee's use or occupancy of the Premises, or arising from an act or negligence of Lessee or the Lessee Parties, but only to the extent that all such obligations, liabilities, costs, damages, claims and are not covered by the insurance required to be maintained by Lessee and are not caused by the negligent or willful misconduct of Lessor or the Lessor Parties.

(b)    Lessor shall protect, indemnify and save Lessee and the Lessee Parties harmless from and against any and all obligations, liabilities, costs, damages, claims and expenses of whatever nature arising from injury to persons or damage to property on the Premises or arising out of or in connection with Lessor's ownership and operation of the Premises or Lessor's or the Lessor Parties' activities on the Premises, or arising from any negligence or intentional act or willful misconduct of Lessor or the Lessor Parties, but only to the extent that all such obligations, liabilities, costs, damages, claims and expenses are not covered by the insurance required to be maintained by Lessee hereunder. This obligation is in addition to and does not limit any obligation set forth in Section 28 below.

15.    **FIRE AND OTHER CASUALTY**. If the Premises shall be damaged by fire or other casualty (any of the foregoing being hereinafter called a "*Casualty*"), Lessee shall, within thirty (30) days of the date of such Casualty, cause an architect or other contractor, as applicable, to deliver to both Lessor and Lessee, such architect's or contractor's written good faith opinion (the "*Architect's Opinion*") as to (A) the length of time required to cause the Premises to be repaired and restored substantially to the same condition existing prior to the Casualty; and (B) the estimated cost of such repairs and restorations. If said Architect's Opinion indicates that such repairs and restoration shall take in excess of three (3) months from the expiration of the Notice Period (defined below) or if such Casualty shall occur during the last two (2) Lease Years the then-existing Term, then Lessee shall have the right to terminate this Lease as of the date of such Casualty upon giving written notice to Lessor to such effect at any time during the period (the "*Notice Period*") ending thirty (30) days after Lessee's receipt of the Architect's Opinion. In the event that this Lease is so terminated by Lessee, the net proceeds of the fire and extended coverage insurance carried pursuant to the provisions of Section 13 above (exclusive of that covering Lessee's Personal Property and Lessee-funded Initial Improvements and Other Improvements) shall be paid to Lessor. Unless this Lease is terminated as aforesaid, Lessee shall make the insurance proceeds available to Lessor and Lessor shall, subject to the conditions and limitations set forth below, repair and restore the Premises within ninety (90) days subject to reasonable delays for insurance adjustments and delays caused by acts of force majeure. Rent shall abate in proportion to those portions of the Premises Lessee is unable, in Lessee's reasonable judgment, to use as a result of any such Casualty until Lessor shall have completed such repairs or restorations required by Lessee hereunder. Any excess funds remaining after the completion of such repair or restoration of the Premises shall be paid to Lessee.

16.    **CONDEMNATION**.

(a)    At any time following receipt of notice of an intended, threatened or pending Substantial Taking (defined below), Lessee, at its sole option, may terminate this Lease by written notice thereof to Lessor, such termination to be effective upon the earlier of (i) the date when such possession or use of the Premises or such portion thereof is transferred pursuant to such Taking; or (ii) the date which is one (1) year following the date of Lessee's notice of termination. In the event of a Minor Taking (defined below) or if Lessee elects not to terminate

01272933v11                                      13

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

this Lease in the event of a Substantial Taking although entitled to do so, (i) Lessor shall make the entire amount of Lessor's portion of the condemnation proceeds available to Lessee, so that Lessee can restore (to the extent of the proceeds available) that portion of the Premises necessary or capable of being restored; and (ii) Rent and all other charges payable pursuant to this Lease shall be reduced from and after the date of such Taking as follows:

(i)     Such reduction shall be just and fair and shall be based on the relative percentage of the portion of the Premises so taken against the portion of the Premises remaining following such Taking (defined below);

(ii)     If any such Taking results in the suspension of the operation of Lessee's business on the Premises, all Rent and other charges payable by Lessee hereunder shall abate from the date of such suspension of business until the earlier of (1) the date such business is resumed; or (2) thirty (30) days following completion of said restoration by Lessee;

(iii)     If such Taking results in only a partial suspension of business, the abatement of Rent and other charges shall be apportioned accordingly; and

(iv)     In the event the parties cannot agree upon the amount of the reduced Rent and other charges payable by Lessee, or any other matter under this Section 16, then, the matter shall be submitted to arbitration in the city closest to the Premises, in accordance with the rules of the American Arbitration Association. The decision of the arbitrator shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction hereof. The cost of the arbitration shall be divided as follows: one-half (1/2) shall be paid by Lessor and one-half (1/2) by Lessee.

For purposes hereof, the following terms shall have the following meanings:

"*Substantial Taking*" shall mean a taking, condemnation or redevelopment by any governmental or quasi-governmental entity of all or substantially all of the Premises or of such portion of the Premises or any real estate adjoining the Premises which results in (i) the taking or loss of use of any structures or improvements located on Premises, (ii) the taking or loss of use of five percent (5%) or more of the land included in the Premises, (iii) the taking or loss of use of any means of ingress, egress or access to the Premises, (iv) a change in any zoning or building codes or ordinances, set-back requirements or other governmental laws, regulations or requirements, made after the date of this Lease, which change materially adversely affects the ability of Lessee to conduct the Permitted Use on the Premises, or (v) the taking or loss of use of such portion of the Premises as will materially interfere with the operation of Lessee's business upon the Premises.

"*Minor Taking*" shall mean a taking, condemnation or redevelopment by any governmental or quasi-governmental entity of such portion of the Premises or any real estate adjoining the Premises which does not constitute a Substantial Taking.

"*Taking*" shall mean either a Substantial Taking or a Minor Taking.

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

(b)     The party receiving or delivering any communication of any kind described in this Section 16(b) shall, within five (5) days following delivery or receipt thereof, give the other party notice in accordance with the terms of this Lease of the receipt, content and date of the communication (including a copy thereof): (i) notice (whether written or otherwise) of an intended, threatened or contemplated Taking; (ii) notice in connection with any proceedings or negotiations with respect to a Taking; or (iii) notice of intent or willingness of either Lessor or any governmental or quasi-governmental entity to make or negotiate a private purchase, sale, transfer or redevelopment in lieu of a Taking.

(c)     Lessor and Lessee shall each be entitled to compensation for the appropriation of their respective interests in accordance with Section 16(e) below. The compensable interest of each shall be determined by the law of the State in which the Premises are located, and if allowed under such State law, Lessee may make and pursue its own separate award and claim for compensation and damages.

(d)     Lessor and Lessee shall each have the right to represent his or its respective interest in each proceeding or negotiation with respect to a Taking or intended Taking and to make full proof of his or its claims. No agreement, settlement, sale or transfer to or with the condemning authority shall be made without the consent of both Lessor and Lessee. Lessor and Lessee each agree to execute and deliver to the other any instruments that may be necessary or appropriate to effectuate or facilitate the provisions of this Lease relating to condemnation. Each party covenants and agrees that, with respect to any position it takes in any condemnation proceedings or in any negotiations, in lieu of condemnation, for the private purchase, sale or transfer of the whole or any portion of the Premises, each shall act in good faith towards the other party and shall not take any position inconsistent with this Lease to adversely affect the other party's interest in such a condemnation.

(e)     If the condemning authority does not grant separate awards for each of the interests of Lessor and Lessee set forth in subsections (a) through (f) of Section 16(e)(i) below, the condemnation award and all other compensation for losses of real property, interests therein and damages related thereto, shall be divided between Lessor and Lessee as follows:

(i)     A determination shall be made of the Appraised Value (defined below) of each of the following interests of Lessor and Lessee: (a) Lessor's right, title and interest in the entire Premises as a whole subject to this Lease; (b) the unamortized value of Lessee's interest in the improvements (including leasehold and capital improvements and trade fixtures) located on the Premises that will not be removed by Lessee upon termination of this Lease and which were paid for by Lessee or in which Lessee has an ownership interest, all based on the then current book value as set forth on Lessee's financial statements; (c) Lessee's loss of personal property located on the Premises based on the then current book value as set forth on Lessee's financial statements; (d) Lessee's moving and relocation expenses; (e) Lessee's loss of its leasehold interest, including without limitation the expenses of obtaining, developing and improving any substitute premises, including any increased rent and operating costs; and (f) Lessee's loss of business due to relocation and any delays in obtaining substitute premises.

01272933v11                                15

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

(ii)    If there is a single award and if such award specifically identifies or allocates the amount of the award between the different categories of damages described above, then each party will receive that portion of the award as specifically allocated and granted in the award.

(iii)    If there is a single award and if such award does not specifically identify or allocate the amount of the award between the different categories of damages described above, then Lessor and Lessee agree to share the award in the following manner. If the amount of the award is less than or equal to the sum of the amounts determined for categories (a), (b), (c) and (d) from Section 16(e)(i) above, then Lessee shall receive that percentage of the entire award as results from adding the sum of the amounts in categories (b), (c) and (d) and dividing such sum by the sum of the amounts of categories (a), (b), (c) plus (d). After payment of such percentage of the entire award to Lessee, Lessor shall receive the balance of the award. Lessee may also attempt to seek separate compensation from the condemning authority for its losses under categories (e) and (f). If the amount of the award is greater than the sum of the amounts determined for categories (a), (b), (c) and (d) from Section 16(e)(i) above, then the award shall be divided and distributed as follows: first, the amount of category (a) to Lessor; second, the amount of categories (b), (c) and (d) to Lessee; third, the amounts of categories (e) and (f) to Lessee; and fourth, any remaining balance of the award, if any, to Lessor.

(iv)    Unless otherwise agreed, the "*Appraised Value*" shall be determined by a panel of three M.A.I. appraisers; one to be selected by Lessor, one to be selected by Lessee, and the third to be selected by the first two appraisers. The determination of Appraised Value by a majority of the appraisers shall be binding on the parties for all purposes. The costs of the appraisal process shall be borne one-half (1/2) by each party hereto.

(f)    Notwithstanding anything to the contrary contained in this Lease, Lessor shall not enter into any agreement or settlement with any condemning authority for the redevelopment, sale or transfer of all or any part of the Premises in lieu of, as part of, or in anticipation of a Taking (a "*Settlement*") unless the Settlement provides that this Lease shall terminate on the date that is three (3) years from the date of the Settlement. Lessor shall notify Lessee within five (5) days of any Settlement (a "*Settlement Notice*") and Lessee shall have the option to terminate this Lease at any time after receipt of such Settlement Notice upon twelve (12) months written notice to Lessor. Following Lessee's receipt of the Settlement Notice, the Term of this Lease shall continue for such three (3) year period and Lessee shall remain responsible for all obligations of Lessee under this Lease, including, without limitation, payment of Rent, for such three (3) year period, unless this Lease is sooner terminated by Lessee as provided herein.

(g)    Notwithstanding anything to the contrary contained in this Lease, any option rights that Lessee has under this Lease, if any, to purchase the Premises, shall become exercisable by Lessee within ninety (90) days after Lessee's receipt of a written notice from Lessor or from a condemning authority as to the intent of the condemning authority to proceed with a Substantial Taking.

01272933v11                                16

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

17.   **ASSIGNMENT/SUBLETTING**.

    (a)   Lessee shall not, without the prior written consent of Lessor, which consent shall not be unreasonably withheld, conditioned or delayed: (i) assign, convey, mortgage, pledge or otherwise transfer this Lease, or any part thereof, or any interest hereunder; (ii) permit any assignment of this Lease, or any part thereof, by operation of law; (iii) sublet the Premises or any part thereof; or (iv) permit the use of the Premises, or any part thereof, by any parties other than Lessee or the Lessee Parties.   Furthermore, Lessee may, without the prior written consent of Lessor, assign or otherwise transfer this Lease, or any part thereof, or any interest hereunder, to (a) any affiliate of Lessee; or (b) in connection with and in contemplation of a reorganization, merger, consolidation or the sale of all or substantially all of the capital stock or assets of Lessee (or any other transaction substantially similar in effect); and may sublet, license or permit the use of a part of the Premises, without the prior written consent of Lessor, (x) to companies providing complimentary services to Lessee's business, or (y) to product or service providers providing complimentary services to Lessee's business. Lessor hereby agrees that a license substantially similar in form to that attached hereto as **Exhibit E** is acceptable to Lessor.

    (b)   Any subletting, licensing or assignment hereunder shall not release or discharge Lessee or Guarantor of or from any liability, whether past, present or future, under this Lease, and Lessee shall continue fully liable hereunder. Any subtenant, licensee or assignee shall agree to comply with and be bound by all of the terms, covenants, conditions, provisions and agreements of this Lease to the extent of the space sublet, licensed or assigned. Any sale, assignment, mortgage, transfer, licensing or subletting of this Lease which is not in compliance with the provisions of this Section 17(b) shall be of no effect and void.

18.   **DEFAULT BY LESSEE**.  Should (A) Lessee default in the payment of Rent, or any part thereof, when and as herein provided, and such default shall continue for fifteen (15) days after written notice thereof from Lessor to Lessee; (B) Lessee default in the performance, fulfillment or observance of any of Lessee's other covenants, conditions or agreements herein contained, and such default shall continue for thirty (30) days after written notice thereof from Lessor to Lessee; provided, however, that if the nature of the default is such that it cannot be cured within thirty (30) days, Lessee shall not be deemed in default provided Lessee has promptly commenced the cure and diligently pursues the cure to completion thereafter; or (C) Lessee becomes the subject of voluntary or involuntary proceedings under the federal or state bankruptcy statutes in effect from time to time and such proceedings are not discharged within sixty (60) days after commencement, then Lessor may thereafter, without further notice or demand, (i) terminate Lessee's right to possession without terminating this Lease and enter the Premises and take full and absolute possession thereof, without such re-entry causing a forfeiture of the Rent or other charges to be paid or the covenants to be performed by Lessee hereunder for the full Term, and Lessor shall thereafter lease or sublease the Premises for such rent as Lessor may reasonably obtain, crediting Lessee with the rent so obtained after deducting the reasonable costs Lessor incurs by such re-entry, leasing or subleasing, with Lessee paying the shortfall between the rent obtained by Lessor and the Rent, if any, as the Rent becomes due and payable; or (ii) terminate this Lease and re-enter and take full and absolute possession of the Premises free from any further right or claim by or against Lessee.  Notwithstanding the above, if a default by Lessee can be cured by the payment of money, Lessor, at its election, may spend such money as is reasonably necessary to cure such default, and Lessee agrees to pay Lessor, as additional rent,

01272933v11                                         17

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

within ten (10) business days after written demand therefor, any amounts paid by Lessor, together with interest thereon from the date of payment by Lessor at the highest rate of interest per annum permitted to be contracted for by individuals in the State in which the Premises are located. All remedies provided for in this Lease shall be cumulative and in addition to all other remedies available to Lessor under applicable law.

19.    **DEFAULT BY LESSOR**. Lessee shall give Lessor written notice of any material default by Lessor in the performance of any material covenant or obligation to be kept or performed hereunder, and if such default continues for a period of thirty (30) days after receipt by Lessor of a written notice from Lessee specifying such default; provided, however, that if the nature of the default is such that it cannot be cured within thirty (30) days, Lessor shall not be deemed in default provided Lessor has promptly commenced the cure and diligently pursues the cure to completion thereafter, but in no event shall such cure period be extended for a period of more than ninety (90) days from the date of the notice by Lessee of such default. Upon a default by Lessor beyond any applicable notice and cure period, Lessee, at its election, may (A) terminate this Lease or (B) spend such money as is reasonably necessary to cure such default and thereafter deduct the amount so spent from Rent due or to become due hereunder. All such remedies shall be cumulative and in addition to all other remedies available to Lessee under applicable law.

20.    **NOTICE**. In every instance where it shall be necessary or desirable for Lessor or Lessee to serve any notice or demand upon the other, such notice or demand shall be sent either by United States Registered or Certified Mail (postage prepaid), nationally recognized courier service (postage prepaid), or personal delivery to the parties at the addresses set forth below:

| | |
|---|---|
| **To Lessor:** | BHT of Richmond, LLC<br>Attn: Ariel Edry<br>5555 Anglers Ave., Suite 25<br>Fort Lauderdale, FL 33312<br>Telephone: (954) 406-6744 |
| **Copy To:** | Steven K. Platzek, Esq.<br>Graner Platzek & Allison, P.A.<br>720 East Palmetto Park Road<br>Boca Raton, Florida 33432<br>Telephone: (561) 750-2445 |
| **If to Lessee:** | Insurance Auto Auctions, Inc.<br>Two Westbrook Corporate Center, Third Floor<br>Westchester, Illinois 60154<br>Attention: Real Estate Department |
| **With copy to:** | Insurance Auto Auctions, Inc.<br>Two Westbrook Corporate Center, Tenth Floor<br>Westchester, Illinois 60154<br>Attention: Real Estate Counsel |

01272933v11                                      18

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

**With copy to:**      Property Works
Attn: IAAI Lease
Fax: (678) 791-0475

U.S. Mail or Certified Mail:
P.O. Box 1067
Decatur, Georgia 30031

21.    **MEMORANDUM OF LEASE.**  Within ten (10) business days after the satisfaction or Lessee's written waiver of the Contingencies, the parties shall execute a Memorandum of Lease substantially in the form of Exhibit F attached hereto (the "*Memorandum of Lease*"), to be used for the purpose of recordation, and Lessor hereby consents to recordation of the Memorandum of Lease against the Premises in the public land records of the jurisdiction in which the Premises is located immediately upon Lessor's acquisition of the Premises. At the expiration or earlier termination of this Lease, Lessee agrees to cooperate with Lessor to promptly execute and deliver a termination of the Memorandum of Lease.  If Lessor fails to so deliver such Memorandum of Lease within such ten (10) business day period, Lessee may, at any time thereafter and prior to Lessor's delivery of the Memorandum of Lease, terminate this Lease, in which case this Lease shall be null and void and of no force or effect.

22.    **RELATIONSHIP OF PARTIES.**  Nothing contained in this Lease shall be deemed or construed by Lessor, Lessee, or by any third party, to create the relationship of principal and agent, or of partnership or of joint venture between Lessor and Lessee, it being understood and agreed that neither the method of computation of Rent, nor any other provision contained in this Lease, nor any acts of Lessor or Lessee shall be deemed to create any relationship between Lessor and Lessee other than the relation of landlord/lessor and tenant/lessee.

23.    **TIME.**  Time is of the essence in this Lease, and all provisions of this Lease relating to the time of performance of any obligation under this Lease shall be strictly construed.

24.    **HOLDOVER.**  In the event that Lessee remains in possession of the Premises after the expiration or earlier termination of this Lease, then Lessee shall be deemed to be occupying the Premises as a tenant from month-to-month, subject to all of the conditions, provisions and obligations of this Lease, but without any rights to extend the Term. Lessor's acceptance of Rent from Lessee in such event shall not alter the status of Lessee as a month-to-month tenant whose occupancy of the Premises may be terminated by Lessor at any time upon thirty (30) days prior written notice.

25.    **ACCESS.**  Lessor, its agents or representatives, shall have the right, upon providing Lessee with at least two (2) business days prior notice, to enter the Premises during normal business hours to examine or exhibit the same or for any other reasonable purpose; provided, however, that Lessor, its agents or representatives, shall exercise reasonable care so as not to disturb or otherwise interrupt Lessee's business. Lessor may display "*For Rent*" or "*For Sale*" signs on or about the Premises at any time during the final sixty (60) days of the Term.

26.    **CONDITION OF PREMISES.**  Except as otherwise expressly provided for herein, Lessee accepts the Premises in the present condition, including all equipment and appurtenances,

01272933v11                 19

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

which Lessor represents and warrants are in good working condition and in compliance with all applicable laws, and Lessee agrees that no representation as to the condition or repair of the Premises has been made by Lessor or its agents which is not herein expressed; and likewise agrees and admits that no agreement or promise to decorate, alter, repair, or improve the Premises has been made by Lessor or its agents unless expressly provided for herein. Notwithstanding anything contained herein to the contrary, Lessee shall in no event be responsible for pre-existing conditions at the Premises or latent defects, including without limitation, controlling, maintaining or remediating such pre-existing conditions.

27.   **RENEWAL OPTIONS**.

(a)   Lessee shall have the option (each, a *"Renewal Option"*) to renew this Lease for two (2) successive periods of five (5) years (each, a *"Renewal Term"*, and together with the Initial Term, the *"Term"*). Each Renewal Option is conditioned upon no Default existing at the time of exercise of the Renewal Option or the commencement date of the applicable Renewal Term. The second Renewal Option is conditioned upon proper and timely exercise of the prior Renewal Option. To exercise a Renewal Option, Lessee must notify Lessor of its exercise of the Renewal Option no later than one (1) year prior to the expiration of (i) the Initial Term as to the first Renewal Option; or (ii) the prior Renewal Term for the second Renewal Option. If Lessee fails to timely deliver such notice as to either Renewal Option, such Renewal Option and any subsequent Renewal Option shall lapse and terminate. The first Renewal Term shall commence upon expiration of the Initial Term, and each subsequent Renewal Term shall commence upon expiration of the prior Renewal Term. Each Renewal Term shall be upon the same terms and conditions set forth in this Lease, with the exception of the Base Rent. During each Renewal Term, Base Rent shall continue to increase as provided in Section 3 above. All references to the *"Term"* of this Lease shall, unless the context shall clearly indicate a different meaning, be deemed to include a reference to the Initial Term and any Renewal Term that becomes part of the Term as provided above.

28.   **ENVIRONMENTAL PROVISIONS**.   Lessor recognizes that Lessee and Lessee's sublessees and licensees, in the normal and ordinary course of their businesses, may use and utilize certain Hazardous Materials (defined below). Lessee agrees, and agrees to require each sublessee and licensee, to comply with all legal requirements applicable to the use, utilization, handling, storage and transportation on the Premises of any Hazardous Materials used in the normal and ordinary course of their business.

Lessee covenants and agrees to indemnify, defend and hold Lessor harmless from any and all claims, losses, liabilities, penalties, costs or expenses of any kind or nature whatsoever, including without limitation, attorney, consultant and expert fees which may at any time during or after Lessee's occupancy, be asserted or imposed against Lessor and which arise out of and are caused by the Release, threatened Release or migration of Hazardous Materials onto, under, from or upon the Premises occurring during the Term and caused by Lessee or by any of Lessee's employees, agents, contractors, invitees, sublessees or licensees (collectively, the *"Lessee Parties"*). Lessor shall fully cooperate with Lessee in responding to any such claim, order or other legal action.

01272933v11                                         20

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

Lessor covenants and agrees to indemnify, defend and hold Lessee and the Lessee Parties harmless from any and all claims, losses, liabilities, penalties, costs or expenses of any kind or nature whatsoever, including without limitation, attorney, consultant and expert fees, which may at any time during or after Lessee's occupancy, be asserted or imposed against Lessee or the Lessee Parties, and which arise out of, or are a direct or indirect result of, or caused by: (A) any Hazardous Materials which were Released at or existed in, under or on the Premises before the Commencement Date of this Lease, including any continued presence of, any migration of, and any injury or damage due to, such Hazardous Materials on or after the Commencement Date of this Lease; (B) any Release, threatened Release, migration or presence of Hazardous Materials at any time at, from, under or on the Premises, or any property that adjoins the Premises, except to the extent (and then only to the extent) Lessor establishes that such claim, loss, liability, penalty, cost or expense is caused by a Release, threatened Release or migration of Hazardous Materials caused by Lessee or the Lessee Parties on or after the Commencement Date of this Lease; (C) any violation of any Environmental Law (defined below) with respect to the Premises before the Commencement Date of this Lease, including any continuation of any such violation after the Commencement Date of this Lease; (D) any violation of Environmental Laws after the Commencement Date of this Lease or any Release or threatened Release of Hazardous Material after the Commencement Date of this Lease, which violation or Release or threatened Release was caused by or through Lessor or any of the Lessor Parties; or (E) any environmental condition identified in the Environmental Reports (defined below).

"*Hazardous Materials*" means (A) pollutants, contaminants, pesticides, petroleum or petroleum products, radioactive substances, solid wastes or hazardous or extremely hazardous, special, dangerous, or toxic wastes, substances, chemicals or materials within the meaning of any Environmental Law, including any "hazardous substance" as defined in or under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C., Sec. 9601, et seq., as amended and reauthorized ("*CERCLA*"), and any "hazardous waste" as defined in or under the Resource Conservation and Recovery Act, 42 U.S.C., Sec. 6902, et seq. ("*RCRA*"), and all amendments thereto and reauthorizations thereof; and (B) any other pollutants, contaminants, hazardous, dangerous or toxic chemicals, materials, wastes or other substances, including any industrial process or pollution control waste or asbestos, which pose a hazard to the environment or the health and safety of any person. "*Release*" means any spill, discharge, leach, leak, emission, escape, injection, dumping, pouring, emptying, disposal or other release of any materials, wastes or substances into the environment, whether or not notification or reporting to any governmental authority was or is required, including any Release which is subject to Environmental Laws. "*Environmental Laws*" means all federal, state and local statutes, regulations, ordinances, rules and policies, all court and administrative orders and decrees, all arbitration awards, and the common law, which pertain to environmental or natural resource matters or contamination of any type whatsoever.

Reference is made to (a) that certain Phase I Environmental Site Assessment Update, dated October 30, 2020, referenced as Project No. 19-44945 and prepared by Advanced GEO (the "*Environmental Consultant*") for Lessor (the "*Environmental Report*") and (b) reliance letter dated October 30, 2020 issued by the Environmental Consultant to Lessee regarding the Environmental Report (the "*Reliance Letter*"). Lessor represents and warrants that true and complete copies of the Environmental Report and Reliance Letter have been tendered by Lessor to Lessee.

01272933v11                                    21

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

For purposes of brevity, the Environmental Report and the Reliance Letter are incorporated herein as though fully set out or literally attached hereto. Furthermore, notwithstanding anything to the contrary contained herein, Lessee and the Lessee Parties shall absolutely and without qualification neither be responsible nor liable for any pre-existing environmental conditions or issues revealed or identified in the Environmental Report.

29.    **JURISDICTION & VENUE**. In any dispute arising out of this transaction, Lessor and Lessee submit to the jurisdiction of the local state or federal court that encompasses the County in which the Premises are located. Additionally, Lessor and Lessee agree that venue lies in said local state or federal courts. Lessor is a limited liability company formed in the State of Florida and qualified to do business in the State of California. Lessee is a corporation formed in the State of Delaware and qualified to do business in the State of California.

30.    **PRIVATE RESTRICTIONS**. Without the prior consent of Lessee, which consent shall not be unreasonably withheld, Lessor covenants that it will not enter into or consent to any covenants or restrictions that would prevent or interfere with Lessee from in engaging in Lessee's Primary Use nor in exercising the rights granted herein because of any restriction, covenant or agreement entered into or consented to by Lessor. If Lessee is prevented from or materially restricted in so using the Premises or in exercising such rights because of any court order or other judicial determination arising out of such restriction, covenant or agreement that is intentionally entered into by Lessor in violation of the terms of this provision, the Rent and other charges to be paid by Lessee hereunder will abate during the period Lessee is so prevented from or restricted in using the Premises or exercising such rights. If said period continues for thirty (30) days or more, Lessee may terminate this Lease at any point thereafter by written notice to Lessor. From and after the execution and delivery hereof, Lessor will defend, indemnify and save harmless Lessee and Lessee Parties from and against all actions, claims, costs (including attorneys' and consultants' fees) and loss arising out of the existence of any such restriction, covenant or agreement or allegations thereof caused by Lessor.

31.    **OBLIGATION TO MITIGATE DAMAGES**. Lessor and Lessee will each have the duty and obligation to mitigate, in every reasonable manner, any and all damage that may or will be caused or suffered by virtue of the other's default under any of the terms and conditions of this Lease.

32.    **PERFORMANCE UNDER PROTEST**. If at any time a dispute shall arise as to any amount or sum of money to be paid by either Lessor or Lessee to the other under the provisions hereof, the party against whom the obligation to pay the money is asserted shall have the right to make payment "under protest" and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of said party to institute suit for recovery of such sums. If it shall be adjudged that there was no legal obligation on the part of said party to pay such sums or any part thereof, said party shall be entitled to recover such sums or so much thereof as it was not legally required to pay under the provisions of this Lease with interest at *The Wall Street Journal* prime rate plus 2% per annum.

33.    **REASONABLE COMMERCIAL TRANSACTION**. This Lease shall be given a reasonable construction so that the intention of the parties to engage in a commercially reasonable business relationship is carried out.

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

34.    **WASTE OR NUISANCE.** Lessee shall not commit or permit the commission by others of any waste on the Premises. Lessee shall not commit or permit materials (waste or otherwise) to accumulate or to be stored outside the Premises. Lessee shall not maintain, commit, or permit the maintenance or commission of any nuisance as defined by the law of the State in which the Premises are located. Lessee shall not use or permit the use of said Premises for any unlawful purpose.

35.    **EXECUTION AUTHORITY.** Each party represents and warrants that, by executing this Lease, the respective individual has the full power and authority to do so and said execution is in no way a violation of any other agreement the breach of which would cause Lessor or Lessee, as the case may be, to become party to or the subject of litigation by way or lawsuit, cross complaint, counter suit or injunctive relief.

36.    **SERVICE OF PROCESS.** Service of process shall be made in accordance with the rules of the State in which the Premises are located. Provided such method is not then in violation of court rules or procedures for the State in which the Premises are located, Lessor and Lessee accept service of process via *"Federal Express"*, *"UPS"*, or other nationally recognized courier service.

37.    **INTENTIONALLY OMITTED.**

38.    **INCORPORATION OF EXHIBITS.** All exhibits attached to this Lease are hereby incorporated herein as though set forth in full in this Lease itself.

39.    **MISCELLANEOUS.**

(a)    It is agreed that all the provisions hereof are to be construed as covenants and agreements as if so specifically stated and that all of the terms and provisions hereof shall bind and inure to the benefit of the parties hereto, their successors and assigns.

(b)    It is agreed that the provisions of this Lease are separable and, therefore, the invalidity or unenforceability of any provision of this Lease shall not affect or impair the validity and enforceability of any other provision.

(c)    The failure of Lessor or Lessee to seek redress for violation of or to insist upon the strict performance of any term, covenant or condition of this Lease shall not be construed, taken or held to be a waiver, acquiescence in or consent to any further or succeeding violation of the same term, covenant or condition. No provision of this Lease shall be deemed to have been waived by a party hereto unless such waiver be in writing and signed by such party.

(d)    Whenever a period of time is herein provided for either party to do or perform any act or thing, that party shall not be liable or responsible for any delays directly and primarily due to strikes, riots, acts of God, national emergency, any COVID-19 outbreak or any other national health emergency, acts of public enemy, governmental restrictions, laws or regulations, or any other cause or causes, whether similar or dissimilar to those enumerated, beyond its reasonable control.

01272933v11                                          23

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

(e)     Words in the singular, plural, masculine, or feminine as used herein shall have the same meanings and be construed as required by the context of this Lease.

(f)     The captions of the sections appearing in this Lease in no way define, limit, construe or describe the scope or intent of such sections.

(g)     This is the entire agreement between the parties hereto and it may not be modified or altered, except by a further writing signed by the parties. This Lease shall be construed in accordance with the laws of the State in which the Premises are located.

(h)     Lessor shall be responsible for any improvements, alterations or repairs to the common areas and areas of the Premises required to comply with the provisions of Title III of the Americans With Disabilities Act of 1990 (42 U.S.C. §12101, et seq.) and the regulations and guidelines promulgated thereunder, as all of the same may be amended and supplemented from time to time (collectively, "*ADA*").

(i)     In the event of any uncured default under this Lease by either Lessor or Lessee, and if the non-defaulting party shall deem it necessary to engage attorneys or institute any suit against the other by reason of such a default, then the non-prevailing party shall reimburse the prevailing party for its reasonable expenses incurred as a result of the default, including, without limitation, attorneys' fees and costs.

(j)     This Lease may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other party. This Lease, to the extent signed and delivered by means of a facsimile machine or other electronic method containing a reproduced signature, shall be treated in all manner and respects as an original contract and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of a facsimile machine or other electronic method to deliver a signature or the fact that any signature or contract was transmitted or communicated through the use of facsimile machine or other electronic method as a defense to the formation of a contract and each such party forever waives any such defense

(k)     Lessor acknowledges that the obligations of the Lessor entities under this Lease are joint and several.

## 40.  **CONTINGENCIES**.

(a)     Notwithstanding anything to the contrary contained herein, Lessee's obligations under this Lease are expressly subject to and conditioned upon Lessor obtaining any and all necessary governmental approvals, zoning approvals, conditional use permits, special use permits, site plan approvals, building permits, occupancy permits, which are reasonably satisfactory to Lessee, for the Initial Improvements to be constructed (including, but not limited to, the Approvals) and for Lessee to operate its Permitted Use on the Premises (collectively, the "*Approvals*"). In the event that Lessor is unable to obtain any of the foregoing Approvals within two hundred and ten (210) days from the Effective Date (the "*Approval Contingency Period*"), then Lessee may terminate this Lease by sending written notice to Lessor on or before the

01272933v11                                                24

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

expiration of the Approval Contingency Period, in which case this Lease shall be terminated and null and void.

(b)     Lessee's obligations under this Lease shall be further contingent upon Lessee's review of and satisfaction with (i) a leasehold title commitment for the Premises (the "*Commitment*"), issued by First American Title Insurance Company (the "*Title Company*"), (ii) the title documents referenced in the Commitment (collectively, the "*Title Documents*"), (iii) an ALTA survey of the Premises, issued by a reputable surveyor licensed in the State of California (the "*Survey*") and (iv) a leasehold title policy of the Premises (the "*Title Policy*", together with the Commitment, the Title Documents, the Survey and the Outstanding Exhibits, the "*Title and Survey Documents*"), issued by the Title Company, each in a form reasonably acceptable to Lessee. If Lessee, in its reasonable discretion, (x) is unable to obtain a Title Policy in a form reasonably acceptable to Lessee or (y) is otherwise not satisfied with the one or more of the Title and Survey Documents in Lessee's reasonable discretion, Lessee may terminate the Lease by sending written notice to Lessor at any time on or before the thirtieth (30th) day after Lessee's receipt of the Survey from Lessor (the "*Due Diligence Contingency Period*"), in which case the Lease shall be terminated and null and void. Lessor shall reasonably cooperate with Lessee in connection with the issuance of the Title Policy, including, but not limited to, (1) delivering the Survey to Lessee and (2) providing any affidavits, organizational documents, and other title clearance documents reasonably required by the Title Company in connection therewith.

(c)     Lessee, at its sole cost and expense, shall use commercially reasonable efforts to obtain any and all business licenses and other administrative governmental approvals for Lessee to operate its Permitted Use on the Premises (collectively, the "*Lessee Approvals*"). If, despite such efforts, Lessee is unable to obtain all of the Lessee Approvals necessary for the Permitted Use, then Lessee shall have the right to terminate this Lease by sending written notice to Lessor at any time on or before April 1, 2021 (the "*Lessee Approvals Contingency Period*"), in which case this Lease shall be terminated and null and void. The Approval Contingency Period, the Due Diligence Contingency Period and the Lessee Approvals Contingency Period are hereafter collectively referred to as the "*Lessee Contingencies*".

(d)     Notwithstanding anything set forth herein to the contrary, the effectiveness of this Lease is expressly conditioned upon Lessor's acquisition of fee simple title to the Premises (the "*Acquisition Contingency*") on or before thirty (30) days after the expiration or Lessee's written waiver of the Due Diligence Contingency (the "*Acquisition Contingency Period*"). If Lessor fails to so acquire fee simple title to the Premises on or before the expiration of the Acquisition Contingency Period, Lessee may, at any time thereafter and prior to Lessor's acquisition of the Premises, terminate this Lease, in which case (x) this Lease shall be terminated and null and void, and (y) Lessor shall reimburse Lessee for its actual out-of-pocket expenses incurred in connection with this Lease, not to exceed $100,000.00.

(e)     The Lessee Contingencies and Acquisition Contingency are hereafter collectively referred to as the "*Contingencies*".

41.     **BROKERS**. Lessee and Lessor each represent to the other that it has dealt only with Daum Commercial (Dan Foye) ("*Lessee's Broker*") and that no other Broker (defined below) participated in the negotiation of this Lease, submitted or showed the Premises to Lessee, or is or

01272933v11                                    25

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

may be entitled to any Commission (defined below) in connection with this Lease by virtue of having assisted Lessee or Lessor in any way in connection with this Lease. Lessor shall be responsible for paying any and all Commissions in connection with this Lease. Notwithstanding the foregoing, Lessor and Lessee each agree to indemnify, defend, and hold the other harmless from and against any and all claims of any Brokers claiming through it, other than Lessee's Broker and Lessor's Broker, for Commissions in connection with this Lease, and any and all costs and expenses incurred by the other party in defending against any such claims. As used herein, "*Broker*" shall include any finders or other persons who may be entitled to a Commission or fee as a result of the execution of this Lease; and "*Commission*" shall include finders' fees or other charges of any kind due or claimed to be due to any Broker in connection with this Lease.

42.   **NON-DISTURBANCE AND ATTORNMENT AGREEMENT.**   Within ten (10) business days after the satisfaction or Lessee's written waiver of the Contingencies, Lessor shall deliver to Lessee a non-disturbance and attornment agreement ("*NDA*"), in form and substance reasonably satisfactory to Lessee, from any and all lenders with a security interest in and any ground lessors of the Premises ("*Senior Parties*"). The NDA shall provide that each Senior Party will not (A) name Lessee in any foreclosure action; (B) terminate this Lease as a result of any foreclosure judgment, Sheriff's sale of the Premises or other enforcement of its remedies; or (C) otherwise disturb Lessee's use and possession of the Premises pursuant to this Lease. If Lessor fails to so deliver such NDA within such ten (10) business day period, Lessee may, at any time thereafter and prior to Lessor's delivery of the NDA, terminate this Lease, in which case this Lease shall be null and void and of no force or effect.

43.   **RIGHT OF FIRST REFUSAL.**   Lessor grants to Lessee a continuing right of first refusal during the Term to purchase the Premises or any portion thereof pursuant to and on the terms set forth in this Section 43. If Lessor receives a bona-fide offer to purchase the Premises or any portion thereof from a third party and it intends to accept the offer, Lessor shall first deliver a written offer to Lessee (the "*Trigger Notice*") setting forth in reasonable detail the terms Lessor intends to accept. The Trigger Notice shall include a copy of the proposed contract of sale, if Lessor is in receipt of same, setting forth the terms and conditions of the sale, redacting the name, address and other identifying or contact information of the proposed purchaser. The right of first refusal will be deemed waived and void with respect to the Lessor's consummation of the proposed transaction, if Lessee fails within ten (10) business days after receipt of the Trigger Notice to deliver to Lessor written notice committing to purchase the Premises or the subject portion thereof upon the same terms contained in such offer. If Lessee exercises its right of first refusal, Lessee shall be obligated to close the purchase of the Premises or the subject portion thereof in accordance with the terms of the subject offer. If Lessee fails to exercise its right of first refusal within such ten (10) business day period, Lessor shall be free to sell the subject portion of the Premises to the third party, provided the sale is on terms no more favorable to the buyer than the terms offered to Lessee. If Lessor desires to sell the subject portion of the Premises to the third party on any other terms more favorable than those specifically offered to Lessee, or in the event Lessor does not close the sale to the third party within the time specified in the offer, or in the event Lessor desires to sell the subject portion of the Premises to any other party, Lessor shall first make a new offer to sell to Lessee on the same terms as set forth herein, and Lessee shall have a right of first refusal to purchase the subject portion of the Premises on such changed terms.

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

44.   **GUARANTY OPTION**. From the Rent Commencement Date until the first anniversary thereof, Lessor shall have the option (the "*Guaranty Option*") to obtain a guaranty from Lessee's parent company, IAA, Inc. (the "*Guarantor*"), by providing written notice thereof to Lessee (the "*Guaranty Option Exercise Notice*"). Within ten (10) days from Lessee's receipt of the Guaranty Option Exercise Notice, Lessee shall cause IAA, Inc. to enter into a guaranty in substantially the form attached hereto as **Exhibit G** (the "*Form of Guaranty*"). In the event Lessor timely exercises its Guaranty Option hereunder, commencing on the day immediately following IAA, Inc.'s execution of the Guaranty, the Base Rent payable under this Lease shall be reduced by ten percent (10.00%).

45.   **FINANCIAL STATEMENTS**. In the event that neither Lessee nor Guarantor is (a) a subsidiary of a publicly traded entity with financial statements publicly available or (b) a publicly traded company, Lessee will furnish the financial statements to Lessor within ten (10) business days after Lessor's written request from time to time, but not more frequently than once in any twelve (12) month period; provided, however, if, at such time, Lessee does not maintain separate financial statements, Lessee may provide financial statements from Guarantor to satisfy this requirement. Such statements shall include at least a balance sheet, income statement and statement of changes in financial position for the most current month end, year to date and prior year-end certified by a duly authorized representative to be an accurate representation of the financial condition. Such statements shall be prepared in accordance with sound accounting principles consistently applied and, if such is the normal practice of Lessee or Guarantor (as applicable) as to annual statements, audited by an independent certified public accountant for the period covered. Lessor agrees to use reasonable efforts to keep confidential and not use such financial statements and information, except in connection with the administration or enforcement of this Lease, a proposed sale of the Premises, the consummation or administration of loan transactions or as otherwise permitted hereunder.

45.   **LESSOR'S PUT OPTION.**

(a)   In the event Lessee elects to terminate this Lease pursuant to Section 3, 5 or 30 hereof, Lessor shall have the option to either (i) retain the Premises, in which case this Lease shall terminate as of the date specified in the termination notice from Lessee; or (ii) cause Lessee to purchase the Premises from Lessor (the "*Put Option*") for a purchase price equal to the then-current Fair Market Value of the Premises (determined on the basis of the Premises not being subject to this Lease or any other lease) (the "*Lessee Purchase Price*"), and otherwise upon the terms contained in this Section 45. "*Fair Market Value*" shall be determined by an M.A.I. appraiser selected by the parties, provided that if the parties cannot agree upon an appraiser, then each party shall select an M.A.I. appraiser, who will then pick a third appraiser, which third appraiser will then determine the then-current value of the Premises. The cost of the appraisal by the deciding appraiser shall be borne one-half (1/2) by each party hereto. Lessor shall exercise such option by written notice to Lessee within thirty (30) days after Lessee's election to terminate. The closing date (the "*Closing Date*") shall take place on a date agreed upon by the parties no later than ninety (90) days following Lessor's exercise of its Put Option in accordance with this Section 45 (the "*Closing*"). In the event Lessor fails to timely close its disposition of the Premises as provided herein, Lessee's obligation to purchase the Premises shall automatically terminate and Lessee shall no longer have any obligation towards Lessor under this Lease or otherwise.

01272933v11                                27

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

(b)     Lessee shall have the right to obtain an owner's preliminary report of title (a "*Title Commitment*") issued by First American Title Insurance Company writing through its National Commercial Services Division offices in Chicago, Illinois (the "*Title Company*"), which preliminary report shall contain a commitment of the Title Company to issue an owner's title insurance policy on the most current form of ALTA fee owner's title insurance policy, with extended coverage (a "*Title Policy*"), insuring the good and marketable fee simple absolute title of Lessee in the Premises, with liability in the amount of the Lessee Purchase Price, together with legible and complete copies of all exceptions and matters referred to therein, and to the extent available, with such affirmative coverages and endorsements as Lessee shall require, including, without limitation, the following endorsements:  (i) ALTA 3.1 zoning (plus parking and loading docks), (ii) owner's comprehensive, (iii) land "same as" survey, (iv) subdivision compliance, (v) tax parcel identification, (vi) contiguity, (vii) location, (viii) waiver of arbitration, (ix) utilities availability, and (x) access.   At Closing, Lessor shall convey the Premises to Lessee by Special Warranty Deed (subject only to those matters reflected on the title commitment and the deed to which Lessor received its ownership of the Premises, with all mortgages and other liens being paid off out of the Lessee Purchase Price and with Lessor paying the California real property transfer tax owed as a result of such conveyance).  Except to the extent otherwise provided herein, the purchase and sale shall otherwise be consummated in accordance with customary purchase and sale practices for commercial real estate sales in the Rosamond, California area (the "*Closing Standard*"), and the parties shall bear such costs and expenses of the Closing in accordance with such Closing Standard.  The terms and conditions of this Section 45(b) shall survive the termination of this Lease.

46.     **ESTOPPEL CERTIFICATE.**  Within ten (10) days after request by Lessor or Lessee, as applicable, the other party shall deliver a estoppel certificate to any person designated in such request (a) certifying the existence of this Lease and the Guaranty, (b) stating the commencement and termination dates, and (c) certifying (i) that this Lease and the Guaranty are in full force and effect and has not been assigned, modified, supplemented or amended (except by such writing as shall be stated), (ii) that all conditions under this Lease to be performed by Lessee or Lessor, as applicable, have been satisfied (stating exceptions, if any), (iii) no defenses or offsets against the enforcement of this Lease by Lessee or Lessor, as applicable, exist, (iv) that all rent has been paid by Lessee hereunder, and (v) such other information as Lessee or Lessor, or their respective lender or purchaser, as applicable, reasonably requires.

*[Signature Page Follows]*

01272933v11                                      28

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

**IN WITNESS WHEREOF**, Lessor and Lessee have executed this Lease on the day and year first above written.

**LESSOR:**

**LESSEE:**

**BHT OF RICHMOND, LLC**, a Florida limited liability company

By:_____
Print Name: Amran Adar
Title: Authorized Representative

**INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation

By:_____
Print Name:_____
Title: President, U.S. Operations

01272933v11

29

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

## EXHIBIT A-1

### LEGAL DESCRIPTION OF PREMISES

Real property in the unincorporated area of the County of Kern, State of California, described as follows:

THE NORTH 1,250 FEET OF ALL OF THAT PORTION OF THE SOUTH HALF OF SECTION 28, TOWNSHIP 9 NORTH, RANGE 12 WEST, S.B.B.M., IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, AS PER THE OFFICIAL PLAT THEREOF ON FILE IN THE OFFICE OF THE SURVEYOR GENERAL ON SEPTEMBER 19, 1856, LYING EAST OF THE EASTERLY LINE OF THE 200 FOOT STRIP OF LAND GRANTED TO THE SOUTHERN PACIFIC RAILROAD BY AN ACT OF CONGRESS APPROVED MARCH 3, 1871 (16 STAT. AT LARGE 573, CHAP. 122).

APN: 473-023-06-00-3

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

## EXHIBIT A-2

## DEPICTION OF PREMISES



DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

## EXHIBIT C

## RENT COMMENCEMENT DATE CERTIFICATE

**THIS RENT COMMENCEMENT DATE CERTIFICATE** (this "*Certificate*") is made as of this ___ day of _____, 202_, by and between **BHT OF RICHMOND, LLC**, a Florida limited liability company ("*Lessor*"), and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

## RECITALS

A.      Lessor is the fee simple owner of that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately seventy-nine and 47/100 (79.47) gross acres (the "*Premises*").

B.      Pursuant to that certain Lease Agreement, dated as of _____, 2021 (the "*Lease*"), Lessor leased the Premises to Lessee.  Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms in the Lease.

C.      Under Section 3(b) of the Lease, Lessor and Lessee agreed to enter into an agreement setting forth certain information with respect to the Premises and the Lease.

**NOW, THEREFORE,** Lessor and Lessee agree as follows:

1.      The Rent Commencement Date is _____, 202_.

2.      The Premises consist of _____ Usable Acres.

3.      The initial annual Base Rent for the Premises is $_____.

4.      The first Lease Year shall expire on _____, 202_.

5.      This Certificate may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other party.  This Certificate, to the extent signed and delivered by means of a facsimile machine or other electronic method containing a reproduced signature, shall be treated in all manner and respects as an original contract and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.  No party hereto shall raise the use of a facsimile machine or other electronic method to deliver a signature or the fact that any signature or contract was transmitted or communicated through the use of facsimile machine or other electronic method as a defense to the formation of a contract and each such party forever waives any such defense.

*[Signature Page Follows]*

01272933v11                                             C-1-1

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

**IN WITNESS WHEREOF**, the parties hereto have caused this Certificate to be executed the day and year first above written.

**LESSOR:**                                      **LESSEE:**

**BHT OF RICHMOND, LLC**, a Florida   **INSURANCE AUTO AUCTIONS, INC.,** an
limited liability company                        Illinois corporation


By:_____          By:_____
Print Name:_____          Print Name:_____
Title:_____          Title:_____

01272933v11                        C-1-2

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

## EXHIBIT D

## CONCEPTUAL IMPROVEMENT PLANS

1.      Dimensional Site Plan prepared by Challman Engineering Inc. and CEI Build Inc. as Job No. 20-732, a copy of which is attached hereto as Exhibit D-1 ("Site Plan").

2.      Insurance Auto Auctions, Inc.'s prototypical Scope of Work Agreement, dated November, 2020, a copy of which has been provided to Lessor.

01272933v11                          D-1-1

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

## EXHIBIT D-1

## SITE PLAN



DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

## EXHIBIT E

## FORM OF LICENSE

### TEMPORARY USE LICENSE AGREEMENT
### (IAA – LICENSOR)

**THIS TEMPORARY USE LICENSE AGREEMENT** (this "*License*") is made this _____ day of _____, 20___, by and between **INSURANCE AUTO AUCTIONS, INC.,** an Illinois corporation ("*Licensor*"); and _____, a _____ ("*Licensee*").

### W I T N E S S E T H:

**WHEREAS,** Licensor is the tenant of those certain premises located at _____ ( the "*Property*"); and

**WHEREAS,** Licensee wishes to use a portion of the Property for _____ ("*Use*"), which portion of the Property consists of approximately _____ square feet and is generally depicted on **Exhibit "A"** attached hereto and made a part hereof ("*Licensed Premises*"), and Licensor is agreeable to such Use subject to the terms and conditions set forth in this License.

**NOW, THEREFORE,** in consideration of the mutual terms and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, Licensor and Licensee agree as follows;

1.      **License.** Subject to the terms and conditions set forth below, Licensor hereby grants Licensee, and Licensee hereby accepts from Licensor, a temporary license for use of the Licensed Premises for the Use, and for the use of certain other common areas of the Property which are necessary for Licensee to have access to the Licensed Premises, in common with Licensor, and with any other tenants and licensees of the Property. Licensee shall not use the Licensed Premises for any other purpose or use except the Use, nor permit the Licensed Premises to be used for any other use or purpose other than as set forth herein. Licensee will not permit the Use of the Licensed Premises to create a nuisance or disturb Licensor, or any other tenants or licensees of the Property. The Licensed Premises are provided to Licensee in "**AS IS, WHERE IS**" condition, without any alteration or warranty. Licensee shall make no alterations of any kind to the Licensed Premises without the prior written consent of Licensor, which consent may be withheld in Licensor's sole discretion. Upon the termination of this License, Licensee shall, if required by Licensor, remove all such alterations, including any data or communication cabling, and Licensee shall also remove all of Licensee's personal property, and return the Licensed Premises to Licensor in as good or better condition as the same exists on the date hereof, ordinary wear and tear excepted.

2.      **License Fees.** Licensee agrees to pay Licensor for the License granted herein the sum of _____ Dollars ($_____) per month (the "*License Fee*"), which shall be paid on the first day of each month. The License Fee for any partial month shall be prorated.

01272933v11                                                E-1-1

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

3.    **Term of License.** The License granted herein shall commence on the date first written above, and will automatically renew each month unless terminated in accordance with the provisions hereof (the *"License Term"*). This License may be terminated at any time by either the Licensor or Licensee upon thirty (30) days' prior written notice to the other party. Licensee shall, upon the termination of this License, vacate the Licensed Premises and peaceably surrender possession and occupancy thereof to Licensor, otherwise in conformance with the terms and conditions hereof.

4.    **Licensor's Approval.** Licensee shall not use any furnishing, equipment, displays, stands, decorations or signs in the conduct of its business at the Licensed Premises or the Property without, in each instance, first obtaining Licensor's prior written consent, which consent may be withheld in Licensor's sole discretion.

5.    **Licensee's Covenants.** Licensee shall: (A) conduct its business at the Licensed Premises at all times in a business-like manner; (B) keep all furnishings, merchandise, equipment, displays, stands, decorations and signs used at the Licensed Premises in a neat, clean and safe condition, and in good operating order and repair; (C) neither solicit business nor distribute advertising matter in any of the common areas outside of the Licensed Premises or the Property; (D) conduct its business at the Licensed Premises at all times in compliance with all federal, state and local laws, ordinances, rules, regulations and codes, including the Americans with Disabilities Act, all environmental laws and any zoning codes; (E) receive or make all deliveries or shipments of any kind to and from the Licensed Premises only as designated by Licensor, and only at such times as designated by Licensor; (F) properly store and dispose of all garbage and refuse at the Licensed Premises and the area immediately adjoining thereto; (G) not install or use at the Licensed Premises any radio, television, phonograph, public address system or similar device, or aerial attached thereto, without Licensor's prior written consent; (H) not place, suffer or permit any obstructions or merchandise in any areas except the Licensed Premises, and not in any way interfere with or cause disturbance to the use and quiet enjoyment of Licensor or any other tenant or licensee in any other portion of the Property. Licensee shall procure all licenses or other governmental approvals or permits necessary for Licensee's Use, and shall be solely responsible for paying all governmental charges or taxes relating to its business and Use conducted at the Licensed Premises. Licensee shall make all necessary repairs to any areas damaged as a result of its Use of the Licensed Premises.

6.    **Utilities, Repair and Maintenance.** Licensee shall be solely responsible for: (A) making arrangements for any utility services Licensee requires at the Licensed Premises; (B) paying all charges or bills incurred for utility service at the Licensed Premises or used in connection with Licensee's business or Use conducted thereon. Licensee shall be responsible for all repairs and maintenance to the Licensed Premises (including alterations to the Licensed Premises required by governmental action), unless caused by the gross negligence or willful misconduct of Licensor, its employees, contractors or agents, in which case, Licensor shall reimburse Licensee for the reasonable costs incurred by Licensee in repairing such damage.

7.    **Indemnity.** To the maximum extent permitted by law, Licensee agrees to protect, indemnify, defend (with counsel acceptable to Licensor) and hold harmless Licensor, and its respective beneficiaries, officers, directors, shareholders, employees, representatives, agents, contractors, licensees, lessees, guests, invitees, successors and assigns (collectively, the

01272933v11                                E-1-2

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

"*Indemnified Parties*") from and against any and all losses, costs, damages, liabilities, expenses (including, without limitation, reasonable attorneys' fees) and/or injuries (including, without limitation, damage to property and/or personal injuries) suffered or incurred by any of the Indemnified Parties (regardless of whether contingent, direct, consequential, liquidated or unliquidated) (collectively, "*Losses*"), and any and all claims, demands, suits and causes of action brought or raised against any of the Indemnified Parties (collectively, "*Claims*"), arising out of, resulting from, relating to or connected with: (A) any act or omission of Licensee or its officers, directors, shareholders, employees, representatives, agents, contractors, licensees, lessees, guests, invitees, successors and assigns (collectively, the "*Licensee Parties*") at, on or about the Licensed Premises or the Property, and/or (B) any material breach or violation of this License on the part of Licensee. Licensee's obligation to protect, indemnify, defend and hold harmless the Indemnified Parties shall survive any termination of this License. The foregoing indemnification shall include, without limitation, claims made under any workman's compensation law or under any plan for employee's disability and death benefits (including, without limitation, claims and demands that may be asserted by employees, agents, contractors and subcontractors).

**8.**     **Liability Insurance.**   Licensee shall obtain and keep in effect throughout the License Term liability insurance insuring its liabilities hereunder in amounts and under policies that are commercially reasonable, and from insurers licensed to do business in the State in which the Property is located. No such insurance policies shall be canceled, materially altered or non-renewed except upon thirty (30) days' prior written notice to Licensor, and any such policy shall waive all of the insurer's rights of subrogation. A certificate of such insurance shall be delivered by Licensee to Licensor upon the request of Licensor. Prior to occupancy, Licensee shall provide a certificate of insurance to Licensor indicating that Licensor and the owner of the Property are named as additional insureds on each insurance policy secured by Licensee with respect to Licensee's activities and Use at the Property.

**9.**     **Property Damage and Insurance.**   Licensee shall bear all risk of loss, damage, theft, misappropriation or other casualty to all or any portion of Licensee's personal property located at or about the Licensed Premises or the Property, and for the interruption of Licensee's business, irrespective of the cause. Licensee shall procure property, casualty and business interruption insurance in amounts and with deductibles and from insurers as Licensee reasonably deems appropriate. In no event shall Licensor be liable for interruption to Licensee's business, or for damage to, or replacement or repair of, Licensee's personal property.

**10.**     **Workers' Compensation Insurance.**   Licensee shall pay for workers' compensation insurance as required by the laws of the State in which the Property is located.

**11.**     **Casualty/Condemnation.**   Except as otherwise set forth herein, Licensor shall have no obligation at any time during the License Term to make any changes, repairs or improvements to the Licensed Premises or the Property. If the Licensed Premises or the Property shall be damaged or destroyed by fire or other casualty, or shall be subject to full or partial condemnation, Licensor shall have no obligation to repair or restore the same unless it shall so elect in its sole and absolute discretion. If Licensor shall not elect to repair or restore the Licensed Premises or the Property, this License shall terminate as of the date of the casualty or date of taking, without further liability of either party to the other except for obligations

01272933v11                                          E-1-3

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

previously accrued, but unpaid or unperformed as provided herein, and for those obligations which survive the termination of this License.

12. **No Assignment.** Licensee shall not assign this License without the prior written consent of Licensor, which consent Licensor may withhold in its sole and absolute discretion. The consent of Licensor to any assignment shall not constitute a waiver of the necessity for such consent to any subsequent assignment. This prohibition against assigning shall be construed to include a prohibition against any assignment by operation of law. Notwithstanding any assignment, Licensee shall remain fully liable and shall not be released from any obligations under this License.

13. **Immediate Termination.** If Licensee should fail to perform any covenant or obligation arising hereunder, Licensor may, at Licensor's sole discretion and upon prior thirty (30) days' written notice to Licensee, immediately terminate all of Licensee's rights and privileges granted herein, and thereafter, this License shall be of no further force or effect, except for those provisions which expressly survive termination.

14. **Right of Entry.** Licensor and Licensor's agents, representatives, employees, contractors, licensees, invitees, successors and assigns (collectively, "*Licensor Parties*") shall have the right to enter the Licensed Premises, at any time Licensor, in its sole reasonable discretion, deems necessary. In the event any Licensor Party enters the Licensed Premises and its gross negligence or willful misconduct triggers any indemnity hereunder, Licensee's obligations to Licensor are vitiated as to the indemnities and waivers provided for such occurrences

15. **Terminable License Only.** Notwithstanding anything to the contrary contained herein, Licensor and Licensee acknowledge and agree that any and all rights conferred upon Licensee pursuant to this License create an exclusive license only, and that no lease, tenancy, leasehold, easement or other right or interest of any kind or nature (other than a license) is created or conferred pursuant to this License. In no event shall Licensee have or be entitled to any right, remedy or privilege under the forcible entry and detainer laws of the State in which the Property is located, or under any other local, county, state or federal law, rule, regulation or ordinance similar thereto.

16. **No Brokers.** Each party hereto warrants to the other that no broker was used in connection with the negotiation of this License, and that no broker's fee is owed by any party.

17. **Notices.** Any notice required or permitted herein shall be made in writing, and shall be sent (A) by registered or certified U.S. mail, return receipt requested; (B) by nationally recognized courier service; (C) or by hand delivery; to the addresses for the respective party set forth below, or any other address provided to the other party in writing from time to time:

|  |  |
|---|---|
| If to Licensor: | Insurance Auto Auctions, Inc.<br>Two Westbrook Corporate Center, Third Floor<br>Westchester, Illinois 60154<br>Attention: Real Estate Department |

01272933v11                     E-1-4

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

With a copy to:        Insurance Auto Auctions, Inc.
                       Two Westbrook Corporate Center, Tenth Floor
                       Westchester, Illinois 60154
                       Attention: Real Estate Counsel

If to Licensee:        _____

                       _____

                       _____

                       Attention: _____

Written notice to any party shall be deemed to have been given upon being mailed to the proper address provided above, with proper postage prepaid, or upon actual delivery if hand delivered or sent by overnight courier.

**18.** **License Fee Payment.** License Fee payments shall be made directly to: Insurance Auto Auctions, Inc., Two Westbrook Corporate Center, Suite 500, Westchester, Illinois 60154, Attention: Accounts Payable Manager.

**19.** **Environmental.**

(a) General. Licensee covenants and agrees that Licensee shall conduct its operations on the Licensed Premises and on the Property in compliance with all applicable Environmental Laws (defined below). Without limiting any other indemnification obligations of Licensee contained herein, Licensee hereby agrees to protect, indemnify, defend (with counsel acceptable to Licensor) and hold harmless the Indemnified Parties from and against any and all Losses and Claims (including, without limitation, (A) reasonable attorneys' fees, (B) liability to third parties for toxic torts and/or personal injury claims of Licensee Parties, (C) fines, penalties and/or assessments levied or raised by any governmental authority or court, and (D) assessment, remediation and mitigation costs and expenses and natural resource damage claims) arising out of, resulting from, or connected with any Hazardous Substances (defined below) used, brought upon, transported, stored, kept, discharged, spilled, migrated, leached, leaked, escaped, injected, dumped, poured, emptied, disposed or released by Licensee and/or by any of the Licensee Parties in, on, onto, under or from the Licensed Premises and/or the Property.

(b) Definitions. For purposes of this License, the term *"Hazardous Substances"* shall mean all toxic or hazardous substances, materials or waste, asbestos, petroleum or petroleum products, petroleum additives or constituents or any other waste, contaminant or pollutant regulated under or for which liability may be imposed by any Environmental Laws. *"Environmental Laws"* shall mean all federal, provincial, state and local environmental laws (including common law) regulating or imposing standards of care with respect to the handling, storage, use, emitting, discharge, disposal or other release of Hazardous Substances, including, but not limited to, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §6901, et seq., the Clean Air Act, 42 U.S.C. §7401, et seq., the Clean Air Act, 42 U.S.C. §7401, et seq., the Federal Water Pollution Control Act, 33 U.S.C. §1251, et seq., the Emergency Planning and Community

01272933v11                              E-1-5

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

Right to Know Act, 42 U.S.C. §1101, et seq., the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601, et seq., the Toxic Substances Control Act, 15 U.S.C. §2601, et seq., the Oil Pollution Control Act, 33 U.S.C. §2701, et seq., any successor statutes to the foregoing, or any other comparable local, state or federal statute or ordinance pertaining to protection of human health, the environment or natural resources, including without limitation the preservation of wetlands, and all regulations pertaining thereto, as well as applicable judicial or administrative decrees, orders or decisions, authorizations or permits.

(c)     Notice of Violation/Release. Licensee shall provide Licensor with prompt written notice upon Licensee's obtaining knowledge of the existence of any Hazardous Substances on, in or under the Licensed Premises in violation of Environmental Laws, or of any potential or known release or threat of release of any Hazardous Substances affecting the Licensed Premises.

(d)     Survival. This Section 19 shall survive the expiration or other termination of the License.

20.     **Miscellaneous.** All provisions herein shall be binding upon and shall inure to the benefit of the parties hereto, and to their respective legal representatives, successors and permitted assigns. Each provision to be performed by Licensee shall be construed to be both a covenant and a condition, and if there shall be more than one Licensee, they shall all be bound, jointly and severally. The provisions of this License shall be severable, and shall be construed pursuant to the laws of the State in which the Property is located. Time is of the essence. This License, and any exhibits and/or addendum attached hereto, set forth the entire agreement between the parties hereto relating to the subject matter hereof. Any prior conversation or writing are merged herein and extinguished. No subsequent amendment to this License shall be binding upon Licensor or Licensee unless reduced to writing and signed by both parties hereto. This License shall have no binding effect on either party unless and until executed by both Licensor and Licensee.

21.     **Authority.** Licensor and Licensee each represents and warrants that it has full right, power and authority to execute and deliver this License, and to perform each and all of its duties and obligations hereunder.

22.     **No Strict Construction.** The parties acknowledge that the parties and their counsel have had the opportunity to review and revise this License and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this License or any exhibits or amendments hereto.

23.     **Counterparts.** This License may be executed by the parties in counterparts. Each such counterpart shall be deemed an original and all such counterparts, taken together, shall constitute one and the same agreement.

24.     **Electronic Execution.** This License may be executed electronically by transmitting an executed copy of this License to the other party by facsimile or e-mail which

01272933v11                              E-1-6

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

shall be sufficient and such electronic copy of this License shall be deemed to be an original for all purposes.

**25.** **Security Deposit.** Licensee shall maintain with Licensor, upon execution hereof, as security for Licensee's faithful performance of Licensee's obligations hereunder, the sum of _____ and ___/100 Dollars ($_____) (the "*Security Deposit*"). Upon the occurrence of a default by Licensee, Licensor may use, apply or retain all or any portion of the Security Deposit for the payment of any sum to which Licensor may become obligated by reason of such default, or to compensate Licensor for any loss or damage to which it is otherwise entitled to under this License due to such default. If Licensor uses or applies all or any portion of the Security Deposit, Licensee shall, within five (5) days after written demand, deposit cash with Licensor in an amount sufficient to restore the Security Deposit to the amount then required by the terms of this Section 25. Provided that there then is default by Licensee hereunder, the remainder of said Security Deposit, if any, shall be returned to Licensee (or to the last assignee, if any, of Licensee's interest hereunder) within thirty (30) days after the expiration or earlier termination of the term hereof. No trust relationship is created herein between Licensor and Licensee with respect to said Security Deposit.

**26.** **Lessor Consent.** The parties acknowledge that, to the extent the effectiveness of this License is contingent upon Licensor securing a consent from the Property's landlord, this License shall be of no force and effect until such time Licensor receives such a consent in form and substance satisfactory to Licensor.

*[Signature Page Follows]*

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

**IN WITNESS WHEREOF,** Licensor and Licensee have caused this License to be executed and delivered, being first duly authorized so to do, on the date first above written.

**LICENSOR:**                                    **LICENSEE:**

**INSURANCE AUTO AUCTIONS, INC.,**       _____, a
an Illinois corporation                          _____


By:_____             By:_____
Name:_____             Name:_____
Title:_____             Title:_____

01272933v11                          E-1-8

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

EXHIBIT "A" to Temporary Use License Agreement

LICENSED PREMISES

**[Insert description/depiction of Licensed Premises]**

01272933v11                                  E-1-9

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

**EXHIBIT F**

**MEMORANDUM OF LEASE**

DOCUMENT PREPARED BY AND
AFTER RECORDING RETURN TO:

Steven K. Platzek
Graner, Platzek & Allison, P.A.
720 East Palmetto Park Road
Boca Raton, Florida 33432

**MEMORANDUM OF LEASE**

THIS MEMORANDUM OF LEASE (this "*Memorandum*") is made as of this ____ day of _____, 2021, by and between **BHT OF RICHMOND, LLC**, a Florida limited liability company ("*Lessor*"), and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

1.    Lessor is the fee simple owner of that certain real property commonly known as commonly known as 1400 South Sierra Highway, Rosamond, California, legally described on **Exhibit A** attached hereto, consisting of approximately seventy-nine and 47/100 (79.47) gross acres (the "*Premises*").

B.    Pursuant to that certain Lease Agreement, dated as of _____, 2021 (the "*Lease*"), Lessor leased the Premises to Lessee. Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms in the Lease.

4.    This instrument is executed for the purpose of giving public record notice of the fact of the execution of the Lease, and all of the terms and conditions of the Lease and all of the obligations and rights of Lessor and Lessee with respect to the Premises are set forth in the Lease, including, without limitation:

(a)    The Term of the Lease will commence on the date hereof (the "*Commencement Date*") and expire at 11:59 pm (Eastern time) on the last day of the One Hundred Eightieth (180th) full calendar month after the Rent Commencement Date (as defined in the Lease), subject to Lessee's Renewal Options under the Lease.

(b)    Pursuant to Section 43 of the Lease, Lessee has a right of first refusal to purchase the Premises from Lessor.

5.    This instrument is a Memorandum of Lease and is subject to all the terms and conditions of the Lease. In the event of any inconsistency between the terms of this instrument and the terms of the Lease, the terms of the Lease shall prevail as between the parties hereto.

01272933v11                                         F-1-1

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

6. The purpose of this instrument is to give notice of the existence of the tenancy created in the Lease, and of the existence of such Lease.

7. This Memorandum may be executed in multiple counterparts, each of which shall be deemed an original, and together the counterparts shall constitute one instrument.

[Signature Page Follows]

01272933v11      F-1-2

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

IN WITNESS WHEREOF, the parties have executed this Memorandum of Lease Agreement as of the day and year first above written.

**LESSOR:**                                          **LESSEE:**

**BHT OF RICHMOND, LLC**, a Florida limited liability company

**INSURANCE AUTO AUCTIONS, INC.,** an Illinois corporation

By:_____
Print Name:_____
Title:_____

By:_____
Print Name:_____
Title:_____

01272933v11                                    F-1-3

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

## ACKNOWLEDGMENTS

STATE OF _____ )
                            ) SS.
COUNTY OF _____ )

    I, _____, a Notary Public in and for the State and County aforesaid, do certify that _____, who signed the writing above, bearing the _____ day of _____, 20___, for _____, a _____, has this day in my said County, before me, acknowledged the said writing to be the act and deed of said company.

    WITNESS my hand and official seal.


_____
Notary Public

My Commission Expires: _____


STATE OF _____ )
                            ) SS.
COUNTY OF _____ )

    I, _____, a Notary Public in and for the State and County aforesaid, do certify that _____, _____, who signed the writing above, bearing the _____ day of _____, 20___, for Insurance Auto Auctions, Inc., an Illinois corporation, has this day in my said County, before me, acknowledged the said writing to be the act and deed of said corporation.

    WITNESS my hand and official seal.


_____
Notary Public

My Commission Expires: _____


01272933v11                    F-1-4

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

EXHIBIT A TO MEMORANDUM OF LEASE

<u>LEGAL DESCRIPTION OF THE PREMISES</u>

01272933v11                    F-1-5

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

## EXHIBIT G

## GUARANTY OF LEASE

THIS GUARANTY OF LEASE (this "Guaranty") is made for valuable consideration by **IAA, INC.**, a Delaware corporation ("Guarantor") in favor of **BHT OF RICMOND, LLC**, a Florida limited liability company ("Lessor").

Lessor and **INSURANCE AUTO AUCTIONS INC.**, an Illinois corporation (together with any approved assignee, "Lessee") are parties to that certain Lease Agreement, dated as of _____, 2021 (the "Lease"), whereby Lessor leased to Lessee that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately seventy-nine and 47/100 (79.47) gross acres, and legally described on **Exhibit A-1** to the Lease (the "Premises").

In consideration for, among other things, Lessor's execution of the Lease, the undersigned ("Guarantor") hereby guarantees unto Lessor the payment of all of the rent and other sums or charges which may ever become due and payable by Lessee under the Lease, including, without limitation, rent that becomes due and payable by reason of the exercise of any power to accelerate granted to Lessor under the Lease and any damages or other sums that become payable on account of any default by Lessee under the Lease (such rental, other sums and charges being hereinafter collectively referred to as the "Obligations"). In the event of default by Lessee in the payment of any of the Obligations, Guarantor shall, on written demand of Lessor to Guarantor following (i) Lessor's pursuit of all remedies available to it under the Lease, (ii) a final, unappealable judgment against Lessee with respect to same by a court of competent jurisdiction, and (iii) Lessee's failure or inability to pay the amount adjudicated to be due to Lessor, pay the amount due to Lessor with respect to which Lessee is then in default. For the purposes hereof, the term "Lessee" shall include any approved assignee of Lessee which is an affiliate of Lessee, and the term "Lease" shall include any amendment or modification of the Lease effected by Lessor and Lessee, with or without the knowledge or consent of Guarantor.

It is expressly understood and agreed that Lessor shall, before invoking the benefits of this Guaranty, institute suit against and otherwise exhaust its remedies with respect to Lessee or any other person liable for the Obligations and enforce its rights with respect to any security which shall have been given to secure the payment of the Obligations.

The obligations of Guarantor shall be irrevocable and unconditional, irrespective of the genuineness, validity, regularity or enforceability of the Lease, and Guarantor waives the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty. Without limiting the generality of the foregoing, Guarantor agrees that Lessor may, in its sole and absolute discretion, without notice to or consent by Guarantor, and without in any way releasing or impairing any liability or obligation of Guarantor hereunder (i) waive compliance by Lessee with any of its Obligations or covenants under the Lease or waive any default thereunder, or grant any other indulgence with respect to the Lease, (ii) modify, amend or change any provision of the Lease, (iii) grant extensions or renewals of the Lease or the Obligations thereunder or effect any release, compromise or settlement in connection therewith, including any release of the liability of Lessee or any one guarantor or

01272933v11                                            G-1-1

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

other person liable on the Obligations or any part thereof, (iv) transfer its interest in the Premises covered by the Lease or its rights under this Guaranty to any mortgagee or successor owner of the subject premises, (v) consent to the assignment by Lessee of its rights under the Lease to any affiliate of Lessee, and (vi), except as expressly provided herein to the contrary, deal in all respects with Lessee and the Obligations as if this Guaranty were not in effect.

Guarantor agrees to pay the reasonable attorneys' fees and all other out-of-pocket costs and expenses incurred by Lessor in any litigation brought by Lessor to enforce its rights under this Guaranty, provided that Lessor is the prevailing party in such litigation to enforce its rights under the Guaranty.

In the event any payment by Lessee to Lessor is held to constitute a preference under the bankruptcy laws, or if for any other reason Lessor is required to refund such payment or pay the amount thereof to any other party, such payment by Lessee to Lessor shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Lessor upon demand. Guarantor's liability hereunder shall in no way be affected by (i) the release or discharge of Lessee in any creditors', receivership, bankruptcy or other proceedings; (ii) the impairment, limitation or modification of the liability of Lessee or the estate of Lessee in bankruptcy, or of any remedy for the enforcement of Lessee's said liability under the Lease, resulting from the operation of any present or future provision of the United States Bankruptcy Code or other statute or from the decision in any court; (iii) the rejection or disaffirmance of the Lease in any such proceedings; or (iv) any disability or other defense of Lessee.

Until the Obligations have been paid in full, Guarantor shall not have any right of subrogation unless such right is expressly granted in writing by Lessor.

Lessor in its reasonable discretion may apply all payments received by it from Lessee, Guarantor or any other guarantor under any other instrument, or realized by it from any security in such manner and order or priority as Lessor reasonably sees fit, to any of the Obligations of Lessee, whether or not any of the Obligations to which any payment is applied are due at the time of such application.

This Guaranty shall apply to the Lease, any extension or renewal thereof and to any holdover term following the expiration of any lease term or renewal thereof.

This Guaranty shall be construed in accordance with and governed by the laws of the State of California.

This Guaranty shall be binding upon Guarantor and its successors, and shall inure to the benefit of Lessor and its successors. This instrument may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement executed in writing by Guarantor and Lessor.

*[Signature Page Follows]*

01272933v11                                                 G-1-2

DocuSign Envelope ID: C9969552-1896-42BA-9760-831CA7CD8D7E

**EXECUTED** as of this _____ day of _____, 202__.

GUARANTOR:

**IAA, INC.,**
a Delaware corporation

By: _____
Name: _____
Title: _____

# EXHIBIT B

DocuSign Envelope ID: E663A3E4-DF3B-44FF-B780-084DF6CAEB00

## FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of September 22, 2021, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

## RECITALS

A.    Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Lease*"), for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.    The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.    **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.    **Commencement Date and Effective Date.** The Commencement Date and the Effective Date, as used in the Lease, are February 26, 2021.

3.    **Approval Contingency Period.** The Approval Contingency Period is hereby extended through and including January 7, 2022.

4.    **Target Completion Date.** The Target Completion Date is hereby amended to the two hundred seventieth (270th) day after the earlier of (a) issuance of Approvals, or (b) expiration of the Approval Contingency Period.

5.    **Miscellaneous.**

5.1    Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

5.2    This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed

1

DocuSign Envelope ID: E663A3E4-DF3B-44FF-B780-084DF6CAEB00

and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

      5.3    The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto

      5.4    The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

DocuSign Envelope ID: E663A3E4-DF3B-44FF-B780-084DF6CAEB00

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this First Amendment to Lease as of the day and year second above written.


LESSOR:

**BHT OF RICHMOND, LLC**, a Florida
limited liability company

By:    BHT Manager, LLC, a Florida limited
       liability company, its Manager

By:    _____
       Amram Adar
       Manager


LESSEE:

**INSURANCE AUTO AUCTIONS, INC.,**
an Illinois corporation

By:    _____
       Peter Doder
       SVP, Market Development


3

DocuSign Envelope ID: FFE19ABC-3989-404A-B5B9-2CE95821F8E7

## SECOND AMENDMENT TO LEASE

THIS SECOND AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of January 5 , 2022, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

## RECITALS

A.     Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*" and, together with the Original Lease, the "*Lease*"), for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.     The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.     **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.     **Approval Contingency Period.** The Approval Contingency Period is hereby extended through and including February 28, 2022.

3.     **Miscellaneous.**

3.1     Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

3.2     This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed

01405928v2                                    1

DocuSign Envelope ID: FFE19ABC-3989-404A-B5B9-2CE95821F8E7

and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

3.3     The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto

3.4     The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

01405928v2                              2

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Second Amendment to Lease as of the day and year second above written.

LESSOR:                                          LESSEE:

**BHT OF RICHMOND, LLC**, a Florida              **INSURANCE AUTO AUCTIONS, INC.**,
limited liability company                        an Illinois corporation

By:    BHT Manager, LLC, a Florida limited
       liability company, its Manager            By: _____
                                                        Peter Doder
By: _____                    SVP, Market Development
       Amram Adar
       Manager

01405928                      Signature Page to Second Amendment to Lease

DocuSign Envelope ID: 429F91C6-E472-4260-988D-FE173AD9DB2D

## THIRD AMENDMENT TO LEASE

2/28/2022        THIS THIRD AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of February _____, 2022, by and between **BHT OF RICHMOND, LLC.,** a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.,** an Illinois corporation ("*Lessee*").

## RECITALS

A.       Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021, as amended by those certain First Amendment to Lease dated September 22, 2021 and Second Amendment to Lease dated January 5, 2022 (collectively, "*Lease*") for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.       The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.       **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.       **Approval Contingency Period.** The Approval Contingency Period is hereby extended through and including April 30, 2022.

3.       **Miscellaneous.**

3.1       Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

3.2       This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

1

DocuSign Envelope ID: 429F91C6-E472-4260-988D-FE173AD9DB2D

3.3    The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto

3.4    The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

DocuSign Envelope ID: 429F91C6-E472-4260-988D-FE173AD9DB2D

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Third Amendment to Lease as of the day and year second above written.

LESSOR:

**BHT OF RICHMOND, LLC**, a Florida limited liability company

By:    BHT Manager, LLC, a Florida limited liability company, its Manager

By: _____
Amram Adar
Manager

LESSEE:

**INSURANCE AUTO AUCTIONS, INC.**,
an Illinois corporation

By: _____
Peter Doder
SVP, Market Development

3

DocuSign Envelope ID: C6DCD17C-55FA-4443-AF30-EC2087974EA8

## FOURTH AMENDMENT TO LEASE

THIS FOURTH AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of April ___, 2022, by and between **BHT OF RICHMOND, LLC**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

4/27/2022

## RECITALS

A.    Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by (i) that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*"), (ii) that certain Second Amendment to Lease dated January 5, 2022 (the "*Second Amendment*"), and (iii) that certain Third Amendment to Lease dated February 28, 2022 (the "*Third Amendment*", together with the Original Lease, the First Amendment and the Second Amendment, the "*Lease*"), for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.    The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.    **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.    **Approval Contingency Period.** The Approval Contingency Period is hereby extended through and including June 30, 2022.

3.    **Miscellaneous.**

3.1.    Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

01427962v2                                           1

DocuSign Envelope ID: C6DCD17C-55FA-4443-AF30-EC2087974EA8

       3.2.    This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed

DocuSign Envelope ID: C6DCD17C-55FA-4443-AF30-EC2087974EA8

and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

3.3.    The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto

3.4.    The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

01427962v2                                2

DocuSign Envelope ID: C6DCD17C-55FA-4443-AF30-EC2087974EA8

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Fourth Amendment to Lease as of the day and year second above written.


LESSOR:                                          LESSEE:

**BHT OF RICHMOND, LLC**, a Florida              **INSURANCE AUTO AUCTIONS, INC.,**
limited liability company                        an Illinois corporation

By:    BHT Manager, LLC, a Florida               By: _____
       limited liability company, its                 Peter Doder
       Manager                                         SVP, Market Development

By: _____
       Amram Adar
       Manager

DocuSign Envelope ID: 05042743-CE10-42E8-BD9C-95E6ABFE1E3E

## FIFTH AMENDMENT TO LEASE

THIS FIFTH AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of June 30, 2022, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

## RECITALS

A.      Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by (i) that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*"), (ii) that certain Second Amendment to Lease dated January 5, 2022 (the "*Second Amendment*"), (iii) that certain Third Amendment to Lease dated February 28, 2022 (the "*Third Amendment*"), (iv) that certain Fourth Amendment to Lease dated April 27, 2022 (the "*Fourth Amendment*", together with the Original Lease, First Amendment, Second Amendment, Third Amendment and Fourth Amendment, the "*Lease*") for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.      The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.      **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.      **Approval Contingency Period**. The Approval Contingency Period is hereby extended through and including October 31, 2022.

3.      **Miscellaneous**.

3.1      Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

3.2      This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person.

1

DocuSign Envelope ID: 05042743-CE10-42E8-BD9C-95E6ABFE1E3E

No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

      3.3     The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto

      3.4     The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

DocuSign Envelope ID: 05042743-CE10-42E8-BD9C-95E6ABFE1E3E

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Fifth Amendment to Lease as of the day and year second above written.

LESSOR:                                         LESSEE:

**BHT OF RICHMOND, LLC**, a Florida              **INSURANCE AUTO AUCTIONS, INC.,**
limited liability company                        an Illinois corporation

By:    BHT Manager, LLC, a Florida limited
       liability company, its Manager

                                                 By: _____
                                                     Peter Doder
By: _____                 SVP, Market Development
       Amram Adar
       Manager

3

# EXHIBIT C

DocuSign Envelope ID: D4390246-3885-4017-A8E9-375D436575A9

**Location: Rosamond, California**

## SIXTH AMENDMENT TO LEASE

THIS SIXTH AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of September 28, 2022, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

## RECITALS

A.      Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by (i) that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*"), (ii) that certain Second Amendment to Lease dated January 5, 2022 (the "*Second Amendment*"), (iii) that certain Third Amendment to Lease dated February 28, 2022 (the "*Third Amendment*"), (iv) that certain Fourth Amendment to Lease dated April 27, 2022 (the "*Fourth Amendment*"), (v) that certain Fifth Amendment to Lease dated June 30, 2022 (the "*Fifth Amendment*", together with the Original Lease, First Amendment, Second Amendment, Third Amendment, Fourth Amendment and Fifth Amendment, the "*Lease*") for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and_____ ____ _____ _ _____

B.      The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.      **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.      **Approval Contingency Period.** The Approval Contingency Period is hereby extended through and including February 28, 2023 solely for the purpose of obtaining the LOMA amendment from FEMA. Lessor hereby represents and warrants that all other Approvals have been obtained and are effective.

3.      **Miscellaneous.**

3.1      Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

1

DocuSign Envelope ID: D4390246-3885-4017-A8E9-375D436575A9

3.2     This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

3.3     The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto

3.4     The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

DocuSign Envelope ID: D4390246-3885-4017-A8E9-375D436575A9

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Sixth Amendment to Lease as of the day and year second above written.

**LESSOR:**                                          **LESSEE:**

**BHT OF RICHMOND, LLC,**                            **INSURANCE AUTO AUCTIONS, INC.,**
a Florida limited liability company                  an Illinois corporation

By:    BHT Manager LLC,
       a Florida limited liability company,                  ┌─DocuSigned by:
       its Manager                                   By:_____[ Rich Hoopis ]_____
                                                             └─1411E2396050408
       ┌─DocuSigned by:                              Name: Rich Hoopis
By: ___[ Ram Adar ]_____                Title: SVP, Real Estate & Construction
       └─719C8C1D8FD44B6
Name: Amram Adar
Title: Manager

3

DocuSign Envelope ID: D8FFDE4C-DA82-4799-A6E1-9E9A477324F1

**Location: Rosamond, California**

## SEVENTH AMENDMENT TO LEASE

THIS SEVENTH AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of February 28, 2023, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

## RECITALS

A.     Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by (i) that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*"), (ii) that certain Second Amendment to Lease dated January 5, 2022 (the "*Second Amendment*"), (iii) that certain Third Amendment to Lease dated February 28, 2022 (the "*Third Amendment*"), (iv) that certain Fourth Amendment to Lease dated April 27, 2022 (the "*Fourth Amendment*"), (v) that certain Fifth Amendment to Lease dated June 30, 2022 (the "*Fifth Amendment*"), (vi) that certain Sixth Amendment to Lease dated September 28, 2022 (the "*Sixth Amendment*", together with the Original Lease, First Amendment, Second Amendment, Third Amendment, Fourth Amendment Fifth Amendment, the "*Lease*") for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.     The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.     **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.     **Approval Contingency Period.** The Approval Contingency Period is hereby extended through and including March 15, 2023 solely for the purpose of obtaining the final LOMA amendment from FEMA.

3.     **Miscellaneous.**

3.1     Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

1

DocuSign Envelope ID: D8FFDE4C-DA82-4799-A6E1-9E9A477324F1

3.2    This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

3.3    The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto.

3.4    The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

DocuSign Envelope ID: D8FFDE4C-DA82-4799-A6E1-9E9A477324F1

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Seventh Amendment to Lease as of the day and year second above written.

**LESSOR:**

**BHT OF RICHMOND, LLC,**
a Florida limited liability company

By:    BHT Manager LLC,
       a Florida limited liability company,
       its Manager

By: _Ram Adar_
Name: Amram Adar
Title: Manager

**LESSEE:**

**INSURANCE AUTO AUCTIONS, INC.,**
an Illinois corporation

By: _Rich Hoopis_
Name: Rich Hoopis
Title: SVP, Real Estate & Construction

3

DocuSign Envelope ID: 97B1C765-F134-4E33-AF69-A67612604603

**Location: Rosamond, California**

## EIGHTH AMENDMENT TO LEASE

THIS EIGHTH AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of March 13, 2023, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

## RECITALS

A.      Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by (i) that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*"), (ii) that certain Second Amendment to Lease dated January 5, 2022 (the "*Second Amendment*"), (iii) that certain Third Amendment to Lease dated February 28, 2022 (the "*Third Amendment*"), (iv) that certain Fourth Amendment to Lease dated April 27, 2022 (the "*Fourth Amendment*"), (v) that certain Fifth Amendment to Lease dated June 30, 2022 (the "*Fifth Amendment*"), (vi) that certain Sixth Amendment to Lease dated September 28, 2022 (the "*Sixth Amendment*"), (vii) that certain Seventh Amendment to Lease dated February 28, 2023 (the "*Seventh Amendment*", together with the Original Lease, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, and Sixth Amendment, the "*Lease*") for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.      The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.      **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.      **Approval Contingency Period.** The Approval Contingency Period is hereby extended through and including April 15, 2023 solely for the purpose of obtaining the final LOMA amendment from FEMA.

3.      **Miscellaneous.**

3.1      Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default

1

DocuSign Envelope ID: 97B1C765-F134-4E33-AF69-A67612604603

on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

3.2     This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

3.3     The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto.

3.4     The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

DocuSign Envelope ID: 97B1C765-F134-4E33-AF69-A67612604603

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Seventh Amendment to Lease as of the day and year second above written.

**LESSOR:**

**BHT OF RICHMOND, LLC,**
a Florida limited liability company

By:    BHT Manager LLC,
        a Florida limited liability company,
        its Manager

By: _____
Name: Amram Adar
Title: Manager

**LESSEE:**

**INSURANCE AUTO AUCTIONS, INC.,**
an Illinois corporation

By: _____
Name: Rich Hoopis
Title: SVP, Real Estate & Construction

3

DocuSign Envelope ID: EA7C88AD-0685-4FED-A011-69BFBD49CB53

**Location: Rosamond, California**

## NINTH AMENDMENT TO LEASE

THIS NINTH AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of April 13, 2023, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.,** an Illinois corporation ("*Lessee*").

## RECITALS

A.    Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by (i) that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*"), (ii) that certain Second Amendment to Lease dated January 5, 2022 (the "*Second Amendment*"), (iii) that certain Third Amendment to Lease dated February 28, 2022 (the "*Third Amendment*"), (iv) that certain Fourth Amendment to Lease dated April 27, 2022 (the "*Fourth Amendment*"), (v) that certain Fifth Amendment to Lease dated June 30, 2022 (the "*Fifth Amendment*"), (vi) that certain Sixth Amendment to Lease dated September 28, 2022 (the "*Sixth Amendment*"), (vii) that certain Seventh Amendment to Lease dated February 28, 2023 (the "*Seventh Amendment*"), and (viii) that certain Eighth Amendment to Lease dated March 13, 2023 (the "*Eighth Amendment*", together with the Original Lease, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, and Seventh Amendment, the "*Lease*") for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.    The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.    **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.    **Approval Contingency Period.** The Approval Contingency Period is hereby extended through and including May 15, 2023 solely for the purpose of obtaining the final LOMA amendment from FEMA.

3.    **Miscellaneous.**

3.1    Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default

1

DocuSign Envelope ID: EA7C88AD-0685-4FED-A011-69BFBD49CB53

on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

3.2     This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

3.3     The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto.

3.4     The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

DocuSign Envelope ID: EA7C88AD-0685-4FED-A011-69BFBD49CB53

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Seventh Amendment to Lease as of the day and year second above written.

**LESSOR:**

**BHT OF RICHMOND, LLC,**
a Florida limited liability company

By:    BHT Manager LLC,
       a Florida limited liability company,
       its Manager

By: _____
Name: Amram Adar
Title: Manager

**LESSEE:**

**INSURANCE AUTO AUCTIONS, INC.,**
an Illinois corporation

By: _____
Name: Rich Hoopis
Title: SVP, Real Estate & Construction

3

-82:1547Å.7;36893Å0-*Å +'#$(- Å$/',Å$/!.Å)-&(Å!.$"&%% " &'

**Location: Rosamond, California**

## TENTH AMENDMENT TO LEASE

THIS TENTH AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of May 12, 2023, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.**, an Illinois corporation ("*Lessee*").

## RECITALS

A.     Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by (i) that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*"), (ii) that certain Second Amendment to Lease dated January 5, 2022 (the "*Second Amendment*"), (iii) that certain Third Amendment to Lease dated February 28, 2022 (the "*Third Amendment*"), (iv) that certain Fourth Amendment to Lease dated April 27, 2022 (the "*Fourth Amendment*"), (v) that certain Fifth Amendment to Lease dated June 30, 2022 (the "*Fifth Amendment*"), (vi) that certain Sixth Amendment to Lease dated September 28, 2022 (the "*Sixth Amendment*"), (vii) that certain Seventh Amendment to Lease dated February 28, 2023 (the "*Seventh Amendment*"), (viii) that certain Eighth Amendment to Lease dated March 13, 2023 (the "*Eighth Amendment*"), and (ix) Ninth Amendment to Lease dated April 13, 2023 (the "*Ninth Amendment*", together with the Original Lease, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, and Eight Amendment, the "*Lease*") for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.     The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.     **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.     **Approval Contingency Period**. The Approval Contingency Period is hereby extended through and including June 30, 2023 solely for the purpose of obtaining the final LOMA amendment from FEMA.

3.     **Miscellaneous**.

    3.1     Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby, is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part

1

DocuSign Envelope ID: 0A7348D0-4F7B-4F1E-9D68-1E4265502067

of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

        3.2    This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

        3.3    The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto.

        3.4    The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Tenth Amendment to Lease as of the day and year second above written.

**LESSOR:**

**BHT OF RICHMOND, LLC,**
a Florida limited liability company

By:    BHT Manager LLC,
        a Florida limited liability company,
        its Manager

By: _719C8C1D8FD44B6..._____
Name: Amram Adar
Title: Manager

**LESSEE:**

**INSURANCE AUTO AUCTIONS, INC.,**
an Illinois corporation

By: _1411E2396050408.._____
Name: Rich Hoopis
Title: SVP, Real Estate & Construction

3

DocuSign Envelope ID: 822AD6B3-96D9-4AEB-BA2E-5C805947E0A0

**Location: Rosamond, California**

## ELEVENTH AMENDMENT TO LEASE

THIS ELEVENTH AMENDMENT TO LEASE (this "*Amendment*") is made and entered into as of June 20, 2023, by and between **BHT OF RICHMOND, LLC.**, a Florida limited liability company ("*Lessor*") and **INSURANCE AUTO AUCTIONS, INC.,** an Illinois corporation ("*Lessee*").

## RECITALS

A.      Lessee and Lessor are parties to that certain undated Lease Agreement which was fully executed on February 26, 2021 (the "*Original Lease*"), as amended by (i) that certain First Amendment to Lease dated September 22, 2021 (the "*First Amendment*"), (ii) that certain Second Amendment to Lease dated January 5, 2022 (the "*Second Amendment*"), (iii) that certain Third Amendment to Lease dated February 28, 2022 (the "*Third Amendment*"), (iv) that certain Fourth Amendment to Lease dated April 27, 2022 (the "*Fourth Amendment*"), (v) that certain Fifth Amendment to Lease dated June 30, 2022 (the "*Fifth Amendment*"), (vi) that certain Sixth Amendment to Lease dated September 28, 2022 (the "*Sixth Amendment*"), (vii) that certain Seventh Amendment to Lease dated February 28, 2023 (the "*Seventh Amendment*"), (viii) that certain Eighth Amendment to Lease dated March 13, 2023 (the "*Eighth Amendment*"), (ix) Ninth Amendment to Lease dated April 13, 2023 (the "*Ninth Amendment*") and Tenth Amendment to Lease Agreement dated May 12, 2023 ("*Tenth Amendment*", together with the Original Lease, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Eight Amendment, and Ninth Amendment, the "*Lease*") for that certain real property commonly known as 1400 South Sierra Highway, Rosamond, California, consisting of approximately 79.47 gross acres of land, improvements thereon, and appurtenances thereto, as more fully described in the Lease as the "*Premises*"; and

B.      The parties desire to amend the Lease as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.      **Incorporation; Defined Terms.** The recital paragraphs above are incorporated herein and are made a part hereof by this reference as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the Lease.

2.      **Approval Contingency Period**. The Approval Contingency Period is hereby extended through and including August 31, 2023 solely for the purpose of obtaining the final LOMA amendment from FEMA.

3.      **Miscellaneous**.

3.1      Except as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect, and the Lease, as amended hereby,

1

DocuSign Envelope ID: 822AD6B3-96D9-4AEB-BA2E-5C805947E0A0

is hereby ratified and confirmed. Lessor acknowledges that there is no existing default on the part of Lessee under the terms of the Lease and Lessee acknowledges that there is no existing default on the part of Lessor under the Lease. In the case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

3.2    This Amendment may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and which Amendment shall become effective when all such counterparts have been signed and delivered. This Amendment, to the extent signed and/or delivered by electronic means such as email, DocuSign, or facsimile machine, shall have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto shall raise the use of any electronic method of execution or delivery hereof as a defense to the formation of a contract and each such party forever waives any such defense.

3.3    The parties acknowledge that they and their counsel have had the opportunity to review and revise this Lease and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto.

3.4    The parties represent and warrant to each other that they have not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Amendment.

[SIGNATURE PAGE FOLLOWS]

2

DocuSign Envelope ID: 822AD6B3-96D9-4AEB-BA2E-5C805947E0A0

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Eleventh Amendment to Lease as of the day and year second above written.

**LESSOR:**

**BHT OF RICHMOND, LLC,**
a Florida limited liability company

By:    BHT Manager LLC,
       a Florida limited liability company,
       its Manager

By: _____
Name: Amram Adlar
Title: Manager

**LESSEE:**

**INSURANCE AUTO AUCTIONS, INC.,**
an Illinois corporation

By: _____
Name: Brent Bradshaw
Title: SVP, Real Estate and Environmental Health & Safety

3

# EXHIBIT D

DOUGLAS S. ALLISON, ESQUIRE

STEVEN D. EISENBAND, ESQUIRE

THOMAS U. GRANER, ESQUIRE

STEVEN K. PLATZEK, ESQUIRE

TRACY M. WHITE, ESQUIRE



1699 S. FEDERAL HIGHWAY
BOCA RATON, FL 33432

TELEPHONE (561) 750-2445
FACSIMILE (561) 750-2446
www.granerlaw.com

## Graner Platzek & Allison, P.A.
### ATTORNEYS AT LAW

August 24, 2023

***Via Email (ania.dpierga@IAAI.com)***
Insurance Auto Auctions, Inc.
Attn: Ania Domagala- Pierga, Esq.

***Via Federal Express***
Insurance Auto Auctions, Inc.
Attn: Real Estate Department
Two Westbrook Corporate Center, Third Floor
Westchester, IL 60154

> **Re:    Lease Agreement dated February 26, 2021 (hereinafter the "Lease"), as amended, between BHT of Richmond, LLC (hereinafter the "Lessor") and Insurance Auto Auctions, Inc. (hereinafter the "Lessee")**

Dear Ania:

As you know, the above-styled law firm represents the Lessor in connection with the above referenced Lease. Please note that all capitalized terms set forth herein shall have the same meaning as that in the Lease.

Pursuant to Section 40(a) of the Lease, as amended, please allow this correspondence to serve as Lessor's notice that all necessary approvals required for the "initial Improvements to be constructed" and for "Lessee to operate its Permitted Use on the Premises" have been obtained. Per Section 3(d), the Lease requires the Lessee to deposit into the Escrow Account the Security Deposit within three (3) business days from the date the Approvals are obtained. As such, please have the Escrowee confirm in writing its receipt of the Security Deposit within three (3) business days from the date of this correspondence.

Upon receipt of confirmation that the Security Deposit has been tendered to the Escrowee, my client will begin coordinating the commencement of the Initial Improvements and will be in contact with Lessee's construction team regarding same.

Should you wish to discuss the foregoing in greater detail, please do not hesitate to contact me.

Insurance Auto Auctions, Inc.
August 24, 2023 – Page 2

Sincerely,

Steven K. Platzek

SKP:ka

cc:    Lessor *(via Email only)*
       Michael Sullivan, Esq. *(via Email only)*
       John McOkser, Esq. *(via Email only)*

       Insurance Auto Auctions, Inc. *(via Federal Express)*
       Attn: Real Estate Counsel
       Two Westbrook Corporate Center, Tenth Floor
       Westchester, IL 60154

       Property Works *(via Facsimile (678-791-0475) & First-Class Mail)*
       Attn: IAAI Lease
       P.O. Box 1067
       Decatur, GA 30031

# Graner Platzek & Allison, P.A.
ATTORNEYS AT LAW

1699 SOUTH FEDERAL HIGHWAY, BOCA RATON, FL 33432

# EXHIBIT E



August 24, 2023

## VIA PERSONAL DELIVERY AND FEDEX

BHT of Richmond, LLC
Attn: Ariel Edry
5555 Anglers Ave., Suite 25
Fort Lauderdale, FL 33312

*Re:*   Lease Agreement dated February 26. 2021 (as amended from time to time, the *"Lease"*) between BHT OF RICHMOND, LLC, a Florida limited liability company (*"Lessor"*) and INSURANCE AUTO AUCTIONS, INC., an Illinois corporation (*"Lessee"*), for the lease of the real property commonly known as 1400 South Sierra Highway, Rosamond, California, legally described on Exhibit A-1 and depicted on Exhibit A-2, both attached to the Lease, consisting of approximately seventy-nine and 47/100 (79.47) gross acres (which are anticipated to include approximately sixty and 00/100 (60.00) Usable Acres), and more fully described in the Lease as the "Premises"

To Whom It May Concern:

This letter shall serve as Lessee's notice of termination of the Lease pursuant to Paragraph 40(a) thereof.

Sincerely,

Scott Guenther
Scott Guenther
SVP, North America Operations

Copies to:       Steven Platzek (via FedEx and email; Graner Platzek & Allison, P.A., 720 East Palmetto Park Road, Boca
                 Raton, Florida 33432, and 1699 South Federal Highway, Boca Raton, Florida 33432)

                 Ram Adar (via email)
                 Brent Bradshaw (via email)
                 Andy Renton (via email)
                 Cindy Labno (via email)
                 JLL (via email)

# EXHIBIT F



Douglas S. Allison, Esquire

Steven D. Eisenband, Esquire

Thomas U. Graner, Esquire

Jason S. Perez, Esquire

Steven K. Platzek, Esquire

Tracy M. White, Esquire

**Graner Platzek & Allison, P.A.**

ATTORNEYS AT LAW

1699 South Federal Highway
Boca Raton, Florida 33432

Telephone (561) 750-2445
Facsimile (561) 750-2446
WWW.GRANERLAW.COM

September 30, 2021

*Via Federal Express*
Insurance Auto Auctions, Inc.
Attn: Real Estate Department
Two Westbrook Corporate Center, Third Floor
Westchester, IL 60154

> Re:  Lease Agreement dated February 26, 2021 (hereinafter the "Lease"), as amended, between BHT of Richmond, LLC (hereinafter the "Lessor") and Insurance Auto Auctions, Inc. (hereinafter the "Lessee")

Dear Sir or Madam:

As you may be aware, the above-styled law firm represents the Lessor in connection with the above referenced Lease.

Pursuant to Section 43 of the Lease, please allow this correspondence to serve as Lessor's Trigger Notice. Lessor has received an offer to purchase that certain real property real property commonly known as 1400 South Sierra Highway, Rosamond, California, as further defined in the Lease (hereinafter the "Property") from a third party (hereinafter the "Proposed Buyer"). Pursuant to the Agreement of Purchase and Sale, please note that the purchase price contained therein is $34,551,180.00 with an anticipated closing date of 15 days from completion of the post-construction due diligence, and an initial due diligence period of 30 days with an additional diligence period upon completion of construction of an additional 30 days. Please advise if you require any additional information in connection with the offer to purchase. All capitalized terms herein shall have the meaning set forth in the Lease.

If Lessee elects to purchase the Property at the same price and on the same terms as set forth in the Proposed Buyer's offers to purchase, Lessee must sign where indicated on Exhibit "A" hereto and return Lessee's signature within ten (10) business days of Lessee's receipt of this Trigger Notice. Such election shall represent Lessee's obligation to purchase the Property at the same price and on the same terms as set forth in Proposed Buyer's offers to purchase.

Alternatively, if Lessee does not wish to purchase the Property at the same price and on the same terms as set forth in Proposed Buyer's offers to purchase, please sign on Exhibit "A" where indicated and return it as soon as possible so Lessor may proceed to sell its interest in the Property to Proposed Buyer, subject to and in accordance with Section 43 of the Lease.

Insurance Auto Auctions, Inc.
September 30, 2021 – Page 2

In any event, if within ten (10) business days of Lessee's receipt of this Trigger Notice, Lessee fails to elect to exercise its Right of First Refusal with respect to Proposed Buyer's offers to purchase, Lessor may proceed to sell its interest in the Property to Proposed Buyer, subject to and in accordance with Section 43 of the Lease.

Sincerely,

Steven K. Platzek

SKP:ka

cc:    BHT of Richmond, LLC *(via Email Only)*
       Michael Sullivan, Esq. *(via Email only)*

       Insurance Auto Auctions, Inc. *(via Federal Express)*
       Attn: Real Estate Counsel
       Two Westbrook Corporate Center, Tenth Floor
       Westchester, IL 60154

       Property Works *(via Facsimile (678-791-0475) & First-Class Mail)*
       Attn: IAAI Lease
       P.O. Box 1067
       Decatur, GA 30031

Graner Platzek & Allison, P.A.
ATTORNEYS AT LAW

1699 SOUTH FEDERAL HIGHWAY, BOCA RATON, FLORIDA 33432
TELEPHONE (561) 750-2445    FACSIMILE (561) 750-2446    WWW.GRANERLAW.COM

Insurance Auto Auctions, Inc.
September 30, 2021 – Page 3

## EXHIBIT "A" TO TRIGGER NOTICE

By signing the below, the undersigned elects to exercise the Right of First Refusal with respect to Proposed Buyer's offers to purchase and agrees to purchase the Property at the same price and on the same terms as set forth in the Trigger Notice:

INSURANCE AUTO AUCTIONS, INC.,
an Illinois corporation

By: _____
Name: _____
Title: _____

Date: _____

By signing the below, the undersigned elects not to exercise the Right of First Refusal with respect to Proposed Buyer's offers to purchase, waives its Right of First Refusal as to Proposed Buyer and approves of the Proposed Buyer's purchase, subject to and in accordance with Section 43 of the Lease:

INSURANCE AUTO AUCTIONS, INC.,
an Illinois corporation

By: _____
Name: _____
Title: _____

Date: _____

## Graner Platzek & Allison, P.A.
### ATTORNEYS AT LAW

1699 SOUTH FEDERAL HIGHWAY, BOCA RATON, FLORIDA 33432
TELEPHONE (561) 750-2445    FACSIMILE (561) 750-2446    WWW.GRANERLAW.COM

# EXHIBIT G



Pedersen & Houpt

November 1, 2021

**Michael P. Sullivan**
Attorney at Law
312 261 2241
Fax 312 261 1241
msullivan@pedersenhoupt.com

*Via Email (ariel@bhtpropertiesgroup.com)*
Ariel Edry
BHT of Richmond, LLC
5555 Anglers Ave., Suite 25
Fort Lauderdale, FL 33312

***Re:  Lease Agreement, dated February 26, 2021, as amended (the "Lease"), by and between BHT OF RICHMOND, LLC, a Florida limited liability company ("Lessor"), and INSURANCE AUTO AUCTIONS, INC., an Illinois corporation ("Lessee"), whereby Lessor leased to Lessee that certain real property located at 1400 South Sierra Highway, Rosamond, California, consisting of approximately one hundred thirty nine and forty seven hundredths (139.47) gross acres (the "Premises"). Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms in the Lease.***

Dear Mr. Edry:

Please be advised that I represent Lessee regarding the Lease. Lessee and I received from Lessor's counsel, Steven Platzek from Graner Platzek & Allison, P.A., the enclosed Trigger Notice dated September 30, 2021, regarding Lessor's proposed sale of the Premises to a third-party purchaser. Subsequently, Lessor and Lessee agreed to (a) extend the outside date for Lessee to exercise its right of first refusal with respect to such Trigger Notice to November 1, 2021 and (b) allow Lessee to exercise such right of first refusal via email. Pursuant to Section 43 of the Lease, please be advised that Lessee hereby exercises its right of first refusal to purchase the Premises in accordance with the terms set forth in the Trigger Notice.

Very truly yours,

*Michael P. Sullivan*

Michael P. Sullivan

Enclosure
cc:    Ram Adar (via email)
       Steven K. Platzek, Esq. (via email)
       Richard P. Hoopis (via email)
       Ania Domagala-Pierga (via email)
       Peter Doder (via email)

161 North Clark Street Suite 2700     P 312 641 6888                     A Professional Corporation
Chicago, Illinois 60601-3212          F 312 641 6895                     www.pedersenhoupt.com
01365439v2

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Theodore K. Stream, SBN: 138160 / Donna M. DiCarlantonio, SBN: 312678<br>STREAM KIM HICKS WRAGE & ALFARO, PC<br>3403 Tenth Street, Suite 700 Riverside, CA 92501<br>TELEPHONE NO.: (951) 783-9470    FAX NO.: (951) 783-9475<br>EMAIL ADDRESS: ted.stream@streamkim.com<br>ATTORNEY FOR *(Name):* Plaintiff, BHT of Richmond, LLC | **ELECTRONICALLY FILED**<br>**5/30/2024 8:22 AM**<br>**Kern County Superior Court**<br>**By Vanesa Jackson, Deputy** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **KERN**
STREET ADDRESS: 1215 Truxtun Ave.
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Bakersfield 93301
BRANCH NAME: Metro Division Justice Building

CASE NAME: BHT of Richmond, LLC v. Insurance Auto Auctions, Inc., et al.

| **CIVIL CASE COVER SHEET**<br>☒ **Unlimited**  ☐ **Limited**<br>(Amount  (Amount<br>demanded  demanded is<br>exceeds $35,000)  $35,000 or less) | **Complex Case Designation**<br>☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER: BCV-24-101782 |
|---|---|---|
| | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation
(Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 29, 2024

Theodore K. Stream
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.  Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition



| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF KERN**<br>BAKERSFIELD COURT<br>1215 TRUXTUN AVENUE<br>BAKERSFIELD CA 93301 | FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF KERN<br><br>MAY 30, 2024<br>BY *Julia Barrera* DEPUTY |

**PLAINTIFF/PETITIONER:**
  BHT OF RICHMOND, LLC, A FLORIDA LIMITED LIABILITY
  COMPANY
**DEFENDANT/RESPONDENT:**
  INSURANCE AUTO AUCTIONS, INC., AN ILLINOIS
  CORPORATION

| NOTICE OF ASSIGNMENT TO JUDGE FOR ALL PURPOSES AND<br>NOTICE OF ORDER TO SHOW CAUSE RE CRC RULE 3.110 AND<br>NOTICE OF CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br><br>BCV-24-101782 |
|---|---|

By order of the presiding judge, the above entitled case is assigned to the Honorable T. Mark Smith for all purposes. It will be managed on the direct calendar program in Bakersfield Traffic Courtroom T-2 located at 3131 Arrow St. until its conclusion. Peremptory challenges, if any, must be made within the times set out in CCP §170.6. **All documents to be filed at 1215 Truxtun Avenue, Bakersfield, CA 93301.**

**TO PLAINTIFF AND PLAINTIFF'S COUNSEL:**
You are ordered to appear on **September 12, 2024 in Bakersfield Traffic Courtroom T-2 located at 3131 Arrow St. Bakersfield, CA 93308** at **8:30 AM** to give any legal reason why sanctions shall not be imposed for failure to serve the complaint on all named defendants and file proof(s) of service with the court within sixty (60) days after the filing of the complaint pursuant to California Rules of Court, Rule 3.110. All appearances are mandatory, unless the court receives the, required proof(s) of service five (5) court days prior to the hearing date, and then no appearance is necessary.

**TO EACH PARTY AND THEIR RESPECTIVE ATTORNEY(S) OF RECORD:**
This case is set for Case Management Conference, by the Honorable T. Mark Smith on **November 26, 2024** at **8:30 AM in Bakersfield Traffic Courtroom T-2 located at 3131 Arrow St. Bakersfield, CA 93308.** Case management statements are to be filed at least fifteen (15) days prior to the conference in accordance with California Rules of Court, Rules 3.720 – 3.730. All parties shall comply with California Rules of Court, Rules 3.720 – 3.730.

**NOTICE TO PLAINTIFF'S COUNSEL**

**IMPORTANT:** **You are required to serve this Notice of Assignment and Notice of Order to Show Cause Date and Notice of Case Management Conference Date with the Summons, Complaint [Local Rule 3.7(a)], Alternative Dispute Resolution (ADR) Information Packet, and ADR Stipulation and Order Form ( California Rules of Court, Rule 3.221).**

**NOTICE TO CROSS COMPLAINANT'S COUNSEL**

**IMPORTANT:** **If you are bringing a cross complaint against new parties, you are, likewise, required to serve this Notice of Assignment pursuant to California Rules of Court, Rule 3.110 and Notice of Order to Show Cause date and Notice of Case Management Conference date on the new cross defendants.**

**TARA LEAL**
CLERK OF THE SUPERIOR COURT

Date: May 30, 2024

Signed: 5/30/2024 8:53:24 AM

By: _____
Julia Barrera, Deputy Clerk

BHT OF RICHMOND, LLC, A FLORIDA LIMITED LIABILITY COMPANY VS INSURANCE AUTO AUCTIONS, INC., AN ILLINOIS CORPORATION

BCV-24-101782

The Clerk of the Superior Court's office has received a civil complaint from you for filing. Pursuant to the Trial Court Delay Reduction Act, your case has been assigned to the Honorable T. Mark Smith as monitoring judge.

Judge T. Mark Smith has instituted a direct calendaring system for all cases assigned to him/her as the monitoring judge.

All law and motion, case management and trial setting conferences, ex parte matters and trials will be scheduled before him/her in Bakersfield Traffic Courtroom T-2 located at 3131 Arrow St..

Law & Motion and Ex-Parte hearing dates must be pre-cleared by contacting the Direct Calendaring Clerk at 661-610-6460. Tentative rulings are not provided in advance of the hearing.

At the time of filing the complaint, plaintiff's counsel will be given a Notice of Case Management Conference which sets a conference approximately one hundred eighty (180) days after filing of the complaint. This notice must be served with the summons and complaint on all defendants. Defendants must serve the notice on all cross-defendants named. The notice must also be served on interveners and lien claimants.

Pursuant to Local Rule 3.2.1. a party wishing to appear remotely in any civil proceeding other than an evidentiary hearing or trial, including conferences and law and motion hearings, is permitted to appear via Zoom without advance notice to the court or other parties. By appearing remotely those persons will be deemed to have requested a remote appearance. Instructions for accessing the court's Zoom account can be found on the court's website. Each judicial officer retains the discretion to require a party to appear in person at a conference, hearing, or proceeding, as authorized by Code of Civil Procedure section 367.75. Remote proceedings for evidentiary hearings or trials in all divisions shall be noticed and conducted as authorized by Code of Civil Procedure section 367.75 and California Rules of Court, rule 3.672.

Telephonic appearances for case management conferences and law and motion hearings are available through Court Call. The toll free telephone number for Court Call is (888) 88-COURT. Proper procedures must be complied with under California Rules of Court, Rule 3.670. Arrangements to make appearances through Court Call must be made at least five (5) court days prior to the hearing date.

The Court does not provide court reporters for civil matters. Parties wishing to have a matter reported must provide their own reporter. The court maintains a list of pre-approved official reporters pro tem. Your preferred reporter can be added to this list. Information regarding the court's list is on the court's website.

Another judge will hear settlement conferences in cases assigned to Judge T. Mark Smith. However, those cases that do not settle will be set for trial before him/her.

BHT OF RICHMOND, LLC, A FLORIDA LIMITED LIABILITY COMPANY VS INSURANCE AUTO AUCTIONS, INC., AN ILLINOIS CORPORATION

BCV-24-101782

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF KERN
## SPECIAL RULES RELATING TO CASE MANAGEMENT CONFERENCES

At least fifteen (15) days prior to the case management conference, each party shall prepare, file and serve on each other party a case management conference statement providing the Court with the following information:

1. The "at-issue" status of the case including any new parties that may be contemplated;
2. A brief statement of the type of case and the general facts or contentions;
3. A description of the discovery done to date and that contemplated to be done;
4. Estimated time for trial and whether a jury is demanded;
5. Whether or not the case is entitled to priority in trial setting and if so, the legal authority thereof;
6. An evaluation of the case for alternative dispute resolution, including arbitration (judicial or binding), mediation or private judge handling;
7. If a person injury action, a description of the injuries sustained by each plaintiff and the elements of claimed damage;
8. A statement of any settlement negotiations undertaken thus far;
9. The name of the attorney primary responsible for the case on behalf of the party filing the statement.

More than one party may join in the filing of a single statement.

The case management conference shall be attended by the attorney primarily responsible for the case on behalf of each party or a member of his or her firm or counsel formally associated in the case. The attorney attending shall be thoroughly familiar with the case, and be able to engage in meaningful discussions with court and counsel, and to enter into agreements on behalf of his or her client on the following subjects:

1. The "at-issue" status of the case including the dismissal of the unnamed doe defendants or cross-defendants by agreement of all parties;
2. Discovery conducted and remaining to be done;
3. Amenability of the case to alternative dispute resolution including, but no limited to, arbitration (judicial or binding), mediation, and private judge handling.
4. Delineation of issues including stipulation of facts not in substantial controversy;
5. Settlement prospects;
6. Setting the matter for trial, pre-trial conferences, settlement conference or further case management conference;
7. Any other matters relevant to the processing of the case to a final resolution.

Any violation of these rules shall result in the imposition of substantial sanctions which may include monetary, issue, termination, or other appropriate sanctions.

BHT OF RICHMOND, LLC, A FLORIDA LIMITED LIABILITY COMPANY VS INSURANCE AUTO AUCTIONS, INC., AN ILLINOIS CORPORATION
BCV-24-101782

### CERTIFICATE OF POSTING

The undersigned, of said Kern County, certify: That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the *Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference* attached hereto on all interested parties and any respective counsel of record in the within action by posting true copies thereof, to the Superior Court of California, County of Kern, Non-Criminal Case Information Portal (https://www.kern.courts.ca.gov).

Date of Posting:     May 30, 2024

Place of Posting:     Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 30, 2024

**TARA LEAL**
CLERK OF THE SUPERIOR COURT

Signed: 5/30/2024 8:53:25 AM

By: _____
Julia Barrera, Deputy Clerk

Certificate of Posting - Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

Page 4 of 4

SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN
ALTERNATIVE DISPUTE RESOLUTION (ADR)
INFORMATION PACKET



Kern County Superior Court encourages, and under certain circumstances, may require parties to try ADR before trial. Courts have also found ADR to be beneficial when used early in the case process. The courts, community organizations and private providers offer a variety of ADR processes to help people resolve disputes without a trial. Below is information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local arbitrator, mediator or neutral evaluator. You may find more information about these ADR processes at www.courts.ca.gov/programs/adr.

## Possible Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial depending on the type of ADR process used as well as the particular type of case involved.

Possible Advantages: Saves time; saves money; gives the parties more control over the dispute resolution process and outcome; helps to preserve and/or improve party relationships.

Possible Disadvantages: May add additional time and costs to the litigation if ADR does not resolve the dispute; procedures such as discovery, jury trial, appeals, and other legal protections may be limited or unavailable.

## Most Common Types of ADR
Mediation: A neutral person or "mediator" helps the parties communicate in an effective and constructive manner so the parties can try to resolve their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is generally confidential and may be particularly useful where ongoing relationships are involved, such as between family members, neighbors, employers/employees or business partners.

Settlement Conferences: A judge or another neutral person assigned by the court helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement conference neutral does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different views about the likely outcome of a trial in their case.

Neutral Evaluation: The parties briefly and informally present their facts and arguments to a neutral person who is often an expert in the subject matter of the dispute. The neutral does not decide the outcome of the dispute, but helps the parties to do so by providing them with a non-binding opinion about the strengths, weaknesses and likely outcome of their case. Depending on the neutral evaluation process, and with the parties' consent, the neutral may then help the parties try to negotiate a settlement. Neutral evaluation may be appropriate when the parties desire a neutral's opinion about how the case might be resolved at trial; and, if the primary dispute is about the amount of damages or technical issues, the parties would like a neutral expert to resolve those disputes.

Arbitration:  The parties present evidence and arguments to a neutral person or "arbitrator" who then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are generally more relaxed.  If the parties agree to *binding* arbitration, they waive their right to a jury trial and agree to accept the arbitrator's decision.  With *nonbinding* arbitration, any party may reject the arbitrator's decision and request a trial.  Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time and expense of a trial, or desire an expert in the subject matter of their dispute to make a decision.

## Local Court ADR Programs
The Superior Court, County of Kern offers two types of ADR:  Arbitration in cases in which the amount in controversy as to each plaintiff is $50,000 or less; and DRPA mediation services on the day of the hearing, settlement conference or trial.

**Arbitration:**  The Superior Court of California, County of Kern does use Arbitrators in civil cases where the amount in controversy as to each individual plaintiff is $50,000 or less.  The Court may order the parties to Arbitration or the parties may agree to Arbitration any time before the first case management conference statement is filed. See Local Rule 3.14 at https://www.kern.courts.ca.gov/system/files/local_rules_of_court.pdf

**Dispute Resolution Program Act (DRPA):**  The Superior Court of California, County of Kern also offers mediation services in small claims and unlawful detainer, civil harassment, family law and probate matters.  The Court has contracted with the Better Business Bureau (BBB) under the Dispute Resolution Programs Act (DRPA) to provide these mediation services.  For more information about BBB Mediation Services go to https://www.bbb.org/local-bbb/bbb-serving-central-california-and-inland-empire-counties.

## ADR Coordinator:
Although complaints about arbitrators and mediators are rare, the Superior Court of California, County of Kern does provide a complaint procedure in our Local Rules, Rule 3.14.7.  If you have a complaint or a concern with any of this Court's ADR programs, or simply have a question about ADR, please contact the ADR Administrator at ADRAdministrator@kern.courts.ca.gov or 661-868-5695.

## Resources:
**California Department of Consumer Affairs:**  https://www.dca.ca.gov/consumers/mediation_guides.shtml
**Judicial Branch California Courts – ADR:** www.courts.ca.gov/selfhelp-adr.htm
**ADR Stipulation Form:** https://www.kern.courts.ca.gov/system/files/adr_stipulation_and_order_form.pdf