# EXHIBIT "B"

Office: (951) 783-9470    Fax: (951) 783-9475
ted.stream@StreamKim.com

April 4, 2024

**VIA FIRST CLASS MAIL**

Insurance Auto Auctions, Inc.
Attn: Real Estate Department and Counsel
Two Westbrook Corporate Center, Tenth Floor
Westchester, Illinois 60154

**Re:    Notice of Breach of Lease Agreement dated February 26, 2021 by Insurance Auto Auctions, Inc. and Demand for Enforcement**

To Whom It May Concern:

Please be advised that our firm has been retained as litigation counsel for BHT of Richmond, LLC ("Lessor") in connection with the above-referenced Lease.  This correspondence is being sent in response to Insurance Auto Auctions, Inc.'s ("Lessee") correspondence dated August 24, 2023, in which Lessee attempted to terminate the Lease "pursuant to Paragraph 40(a)".  As more particularly set forth herein, Lessee's attempted termination is invalid and was done wrongfully and without justification.

Lessor satisfied all contingencies required of it pursuant to Paragraph 40 of the Lease within the time required thereunder.  Specifically, the term of the Lease was to commence on the date following, among other things, (a) the satisfaction or Lessee's written waiver of all Contingencies set forth in Section 40 of the Lease; (b) Lessee's receipt of written evidence reasonably satisfactory to Lessee that Lessor has obtained all Approvals; and (c) Lessor's Substantial Completion of the Initial Improvements and satisfactory completion of any required final governmental inspections concerning the Initial Improvements.  The Lease provided that the "Approvals shall be obtained by Lessor prior to the commencement of construction of the Initial Improvements."  The term "Approvals" is defined in the Lease as "all necessary governmental approvals, zoning approvals, conditional use permits, special use permits, site plan approvals, building permits, occupancy permits, **which are reasonably satisfactory to Lessee, for the Initial Improvements to be constructed**… and for Lessee to operate its Permitted Use on the Premises." (emphasis added.)

At the time the Lease was entered into, Lessor did not own the subject property, as it was specifically contemplated by the parties that Lessor would acquire the subject property for the sole purpose of developing it to the specifications of Lessee.  Since that time, Lessor expended significant sums to acquire the subject property, obtained Approvals and prepared for the construction of the Initial Improvements which included the purchase of the necessary aggregate materials to construct the improvements and the purchase of a metal building in compliance with Lessee's required plans and specifications.

3403 Tenth Street ▪ Suite 700 ▪ Riverside ▪ California 92501 ▪ StreamKimLaw.com

April 4, 2024
Page 2 of 3

The Approval Contingency Period was originally set to expire 210 days from the Effective Date of the Lease.  However, this Contingency Period was extended through August 31, 2023, because the parties contemplated that a Letter of Map Amendment ("LOMA") from FEMA may be required for the purpose of commencing construction of the Initial Improvements.  All other Approvals had been met.  However, prior to August 31, 2023, Lessor determined that a LOMA was not required.  Rather, the correct approval needed from FEMA was a Conditional Letter of Map Revision ("CLOMR"), as opposed to a LOMA or final Letter of Map Revision ("LOMR"), which was not possible to obtain prior to construction.  Once the Initial Improvements were fully constructed, FEMA would issue the LOMR upon confirmation that the Initial Improvements were constructed in accordance with the approved plans and specifications.

As Lessor had already received a CLOMR prior to August 31, 2023, Lessor had satisfied the Approval Contingency.   Lessee was aware of Lessor's satisfaction of the Approval Contingency pursuant to Paragraph 40 of the Lease, but Lessee still chose to attempt termination of the Lease.  At the time of the attempted termination, Lessee had no reasonable basis to believe that Lessor did not obtain "any and all necessary governmental approvals, zoning approvals, conditional use permits, special use permits, site plan approvals, zoning approvals, conditional use permits … for the Initial Improvements to be constructed … and for Lessee to operate its Permitted Use on the Premises" pursuant to Paragraph 40 of the Lease.  Therefore, Lessee's termination letter was in clear violation of Lease terms and any purported termination would serve as a material breach of the Lease be Lessee.[1]

To the extent that Lessee's position is that the Lease should be terminated because no LOMA was obtained (and was unnecessary and otherwise impossible to obtain), this position is unfounded.  First, neither the Lease or any of its amendments required Landlord to obtain a LOMA, LOMR, or CLOMR; rather, the Lease required the Landlord to obtain all approvals that "are reasonably satisfactory to Lessee, for the initial improvements to be constructed", which Landlord satisfied prior to the expiration of the Approval Contingency Period.  The language set forth in the Sixth Amendment to Lease (and reiterated in the Seventh Amendment through the Eleventh Amendment) did not modify Landlord's obligations or otherwise place an affirmative duty to obtain a LOMA, but rather it is just extending the Approval Contingency Period for a limited purpose, which became unnecessary and immaterial for the purpose of constructing the Initial Improvements.  Furthermore, "When, through fraud or a mutual mistake of the parties… a written contract does not truly express the intention of the parties, it may be revised… so as to express that intention…"  Civ. Code § 3399.  "In the case of mutual mistake, the contract may be reformed to conform to the intent of the parties."  *Thrifty Payless, Inc. v. The Americana at Brand* (2013) 218 Cal.App.4th 1230, 1243.  Here, the intent of the parties was to extend the Approval Contingency Period so that Lessor could obtain the CLOMR

---

[1] As even more evidence of Lessee's bad faith, the termination letter was sent shortly after Lessee's failed attempt to purchase the property from Lessor for only its hard costs, which amount to 85%-90% less than the fair market value of the subject property with the Lease in place.

April 4, 2024
Page 3 of 3

from FEMA and, thereby, satisfy the Approval Contingency in the Lease.  The fact that the Lease Amendments reference a LOMA when a LOMA was not required as part of the Approvals was clearly a mutual mistake by the parties.  Instead, the parties' intention was simply to extend the Approval Contingency Period to allow Lessor to obtain the necessary approvals from FEMA.  Thus, it is clear that the contract will be reformed, and Lessee's termination letter is not valid.

Lessee's breach has caused Lessor considerable damages, which will likely exceed $30,000,000.00.[2]   Lessor is willing to make one last attempt to resolve this matter with Lessee, and demands that Lessee reinstate the Lease in accordance with its terms, including a revision of the construction deadlines due to delays caused by Lessee's termination and reimbursement of Lessor's carry costs incurred as a result of the improper attempted termination of the Lease.  Should Lessee fail to reinstate the Lease as provided herein, Lessor will have no option but to proceed with the filing of a lawsuit against Lessee for breach of the Lease and will seek specific performance thereunder and/or damages in excess of $30,000,000.00, exclusive of interest accruing on said amount.

Given the parties' prior relationship, Lessor's preference is for the parties to engage in a meaningful dialogue to resolve the foregoing dispute in an amicable and mutually beneficial manner.  In that regard, please call me at your earliest convenience so that we can discuss a resolution that is in the best interest of both our clients.  **However, should this matter not be resolved to my client's satisfaction by no later than twenty (20) days from the date of this correspondence, I have been instructed to file a lawsuit against Lessee as set forth herein.**

Very truly yours,

Theodore K. Stream, of
STREAM KIM HICKS
WRAGE & ALFARO, PC

cc: Ania Domagala—Pierga, Esq. (Via Email Only Ania.dpierga@IAAI.com)

---

[2] Notably, Lessee's purported termination is not its first material breach.  In September of 2021, Lessee also materially breached the Lease by confirming that it would act on its Right of First Refusal in Paragraph 43 of the Lease, and then backing out of the purchase after Lessor had informed the original buyer that it could not move forward with the deal due to Lessee's exercise of said right of first refusal.  This caused additional lost profits damages to Lessor which Lessor will pursue against Lessee in the event that this matter must be taken to litigation.